James M. Wright exhibited his bill in chancery, alledging, that Joseph Wright had bought a negro slave in the state of Maryland, and received a bill of sale for him and brought him to this country, and in a. *9 By years since, placed him under Benjamin Wright, to learn the trade of a Blacksmith; that Benjamin Wright had kept him, after his apprenticeship was tover, many } ears, and claimed and used him as his own ; and Joseph Wright being inattentive to his concerns,’had made no attempt to. recover him, till by-lapse of time, his right to recover had become doubtful, and the said Joseph Wright had conveyed his title to said slave, by bill of sale; to him, the said James M-"Wright; but that Benjamin Wright, exercising act of ownership over him, and having become embaí rass©d, had mortgaged the si ave to a certain Samuel Perceful, for one thousand dollars : That Perceftil being disposed to foreclose his mortgage, a certain Richard Wright had advanced the said sum of one thousand dollars, to redeem the slave, at the request of Benjamin Wright, and had taken from said Benjamin an absolute bill of sale for the slave; but accompanied with an agreement and understanding, that it should operate as a mortgage, and that said Benjamin Wright should have the privilege of redeeming the hoy, after one year : That to make his title complete, and to obviate doubts in recovering the boy, he, James M. Wright, had also purchased from said Benjamin, his interest in the slave, and taken a bill of sale from him$ which is exhibited. The bill further alleges, that the slave is worth at least fifteen hundred dollars, and his annual hire, three hundred and sixty dollars, and praj>s the right of redemption, first setting off his hire against the sum for which he is mortgaged, and a restoration of the slave, and makes the said Joseph, Benjamin and Richard Wright defendants-.
2. Neither Joseph, nor Benjamin Wright answered the bilk Richard Wright answered, and admits that said Joseph Wright had purchased the slave, and that the title was first in him; but alleges that Joseph Wright had parted with his title to Benjamin Wright, and executed a bill of sale for the slave, and denies that Benjamin Wright took him as the slave of Joseph, to learn him the trade of a Blacksmith; but avers, that he took him as his own, and claimed him ever since, and mortgaged him to Perceful, and relies on the lapse of time as a complete bar to ail title set up by the complainant below, derived from Joseph Wright. The answer admits the mortgage to Perceful, and al *10 leges tliat the time havingexpired. and the mortgage being liable to be foreclosed, at the instance of Ben jamin Wright, he purchased the slave by paying up the money to Peaceful, and taking at the same time an absolute bill of sale from Benjamin Wright, and avers that this was intended to be an absolute sale, and deMies any parol agreement, to allow the slave to be re. deemed and alleges that all that could have given color to such an allegation, was, that, at (he time of the sale. he. the said Richard, informed the said Benjamin, that if the slave was sold, he, the said Benjamin* should have the refusal of him, for the same money. The answer also denies the price and hire of the slave to be so high as stated in the bill, and insisls that the price given by the defendant below, was his full value at the time of the sale. The court below dismissed the bill; from which decree the complainant below has appealed.
A bill in quity for the sfave^might not tó be substituted m tíon atiawrto enforce a rnerelegal riglu ; and if statiitVof limibuions will bar it as much as at lav/.
Anadmission 1Ir a¡}•finSfei’ sale on° whishthe complainant , relies, super*®des the^neproviv>g°its execution on the trial,
*10 3. We will first dispose of the claim to the slave, set up in the bill, as put chased from Joseph Wright, 'Rhis claim was rightfully disregarded in the court below. ' For (herdis no proof that Benjamin Wright took the slave originally as the property of Joseph Wright, to learn him the trade of a Blacksmith ; but during the time he heid the slave, he appeared to hold him as his ov n. And although there is no transfer" proved from Joseph Wright, yet the claim cannot be sustained Cor two reasons. First— The great lapse of time which must prevail, as well in chancery as at law, will bar the recovery: And secondly — if the claim 0f the appellant is valid on this ground, it is purely . and ought to liave been asserted in a court of law by some appropriate remedy, as a title paramount to that of Benjamin Wright, Perccful or Richard Wright, claiming under.the said Benjamin. It is evident then, if the appellant can recover at all, it must be by virtue of his title derived from Benjamin Wright, and he must redeem the slave, as he, the said Benjamin, was bound todo.
4. The bill of sale from Benjamin Wright is exhibRed, with the names of two subscribing witnesses anr ncxed The deposition of only one of those is taken, and was rejected on the hearing of the cause, because it was not legally taken. Hence, it has been contend., ed in argument that the appellant has failed to prove *11 aiiy title from Benjamin Wright, and for that cause his hill was correctly dismissed. This argument cannot avail the appellee; because his answer explicitly admits the bill of sale or transfer from Benjamin Wright, aud the testimony proves such a sale. The want therefore of the testimony of the subscribing witness. es to the bill of sale, cannot invalidate the claim of the appellant. He has a right, by the answer, to stand is the shoes of Benjamin Wright. The question then must turn on the right of Benjamin Wright to redeem.
5. In the instrument itself conveying the title of the slave from Benjamin to Richard Wright, there is no right of redemption, and the sale by that writing is absolute1. Although it is a general rule, that written instruments, either in chancery or at law, cannot be-contradicted, varied or changed by parol testimony ; yet equity has admitted an exception in case of mortgages, and has permitted, in some cases, the right of redemption to be substantiated by the swearing of witnesses, where the writing was sileñt. The propriety and policy of this exception, were it res nova, might well be questioned, and no court ought to extend it to cases of doubt and uncertainty. No case could be found more illustrative of the policy and correctness of the general principle, than the present. This record exhibits human nature in an unfavorable light. The malignity of family quarrels, and the danger of family swearing is evident. Connexions of the nearest kind, have opposed each other at the book, and brother has impeached brother as being too degraded to hold a standing in human society. I’o recite the evidence on these matters of fact, would be of no further use to the public, than to place the case.conspicuous as an object of disgust and matter of avoidance. If the testimony on this point was weighed in the nicest scale, the preponderance might then be doubtful, and we might be disposed to say, that in such uncertainty we would not disturb the possession. Thus far, how.ever> we may go with safety, that there was some under¿ standing that Benjamin Wright might again acquire the slave; but whether this was only a promise, that he might repurchase, or a right to redeem as a mortgage or pledge, is the question on which the great doubt is presented. 'I his is the real point in issue between the parties. But we concceive ourselves *12 solved from the necessity of determining the fact, iftlie fact is as contended for by the appellee, the decision of the court below is correct. If it is in favor of the appellant, we conceive he has placed, by his own bill, an insuperable bar to the relief sought.
It is a general principle, that equity wi'l nót inferiere to relieve against any arrangement voluntarily made by both par ties, with an Intention to delay, hinder or defraud the right of creditors, or affect unjustly the rights of others. A writing, secretly intended to be a mortgage, but made oh the face of it an absolute bill of sale, for the purpose of securing the property from creditors, Will be construed an ab soluie b'll of sale against tbe maker of it and ail p er-sons deriving title from him witc a knowledge of such intep iron.
6. It. appears evident, that he was privy to the whole transaction between the appellee and Benjamin Wright* relative to the sale of the slave, and that he drew the bill of sale between them. He tells us in his bill* which is verified by oath, the real reason why the in. strument was drawn as an absolute sale and not as- a mortgage, and, that is. “ that owing to the embarrass, ed situation of Benjamin Wright, at the date of that transaction, said Richard, the appellee, took the mortgage as an absolute bill of sale, to prevent, as he alleged, creditors from forcing a foreclosure; hut yet the instrument was intended as a mortgage, and agreed on as such.” And with this allegation, strong inferences drawn from the testimony* well correspond, and it may account for both parties representing it to the world sometimes as a sale, and at other times, in company more obscure, acknowledging it to be a mortgage. The former course was necessary to complete the concealment of the title. As the appellant was privy to this arrangement, and claims under Benjamin Wright, a party to it, he must be bound by the consequences. It is a general principle, that equity will not interfere tq relieve, against any arrangement voluntarily made by both parties, with an intention to delay, hindtr or defraud the right of creditors, or affect unjustly the in. terest of others. Such, accoiding to the appellant’s, own showing, was the design of the parties, in making the sale in question an absolute one on its face, and a mortgage by private arrangement. Equity ought therefore to leave them, as the decree of the court below has done, in the attitude in which they have placed themselves, without relief as to either.
The decree must therefore he affirmed with cqstfi...