## Blanchard and Wife *vs* Taylor's Heirs.

APPEAL FROM THE MASON CIRCUIT.

*Conveyances. Champerty. Executions. Trust estates.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

Case 155.

*October 4,*

Case stated.

In 1786, a grant issued from the Commonwealth of Virginia to Anthony Thornton for thirty three thousand seven hundred and fifty acres of land, lying in the present counties of Mason, Nicholas and Bracken. In 1793, Thornton conveyed 11,775 acres of this land to Richard Taylor, attorney for Philip Buckner. The consideration of this conveyance, appears from the recitals in the deed, to have been an obligation from the patentee to the locator, which Buckner held as assignee.

In 1795, Buckner conveyed 7,180 acres, part of the 11,775, to Baldwin B. Stith. After the death of Stith, in 1835-6, three of his heirs conveyed their interest in the 7,180 acres, to the appellant, R. T. Blanchard, whose wife was also one of the heirs, and the only one in addition to those who had made the conveyance to Blanchard.

In 1840, Blanchard exhibited his bill in the Mason Circuit Court, alledging the foregoing facts, and also alledging that under executions against the heirs of Stith, he had purchased their interest in 1839-40, in the tract of land conveyed by Buckner as aforesaid to their ancestor, and had obtained a conveyance from the Sheriff.

Relying upon these purchases from the heirs and at Sheriff's sale, the complainant sought a conveyance of the legal title from the heirs of Richard Taylor, who had

BLANCHARD, &c.
vs
TAYLOR'S HEIRS.

as aforesaid obtained it by the deed from the patentee, to him as attorney for Buckner, and which he had held in trust for Buckner and his assignees.

The complainant further alledged, that in 1798, one Richard F. Kissam, pretending to be attorney in fact of Stith, had in that character conveyed about fourteen hundred acres of the 7,180 acre tract, to one George Williams, whose heirs, after the death of Stith, had set up claim to it, and had taken possession and sold portions thereof to sundry persons, who were then in possession residing upon the land. He alledges that the sale by Kissam was without authority, and prays to be quieted against the conveyance made by him to Williams.

By an amended bill, the wife of Blanchard, as one of the heirs of Stith, is united with him as complainant. The unknown heirs of Thornton, the heirs of Taylor, Buckner, Stith, except the complainant, and of Williams, and the tenants in possession, were made defendants.

The heirs of Williams alone resisted the relief sought, except so far as answers were filed for a part of the heirs of Thornton and Buckner, &c. as infants.

Williams' heirs resist, upon the ground that the conveyance from Stith's heirs to Blanchard was champertous; that he acquired nothing by his purchase at the alledged Sheriff's sale; that Kissam was authorized to make the sale and conveyance to their ancestor. They rely also upon an adverse possession for more than twenty years, and the staleness of complainant's equity.

Decree of the Circuit Court.

The Court below, at the May term, 1843, decreed a conveyance from Thornton, Taylor and Buckner's heirs to the complainants to all the 7,180 acres, except as to the part claimed by the heirs of Williams, and as to them and that part of the land, reserved the case for future decision, and at a subsequent term, dismissed the bill. Blanchard has appealed to this Court.

Whether the first decree was ever carried into effect, does not appear, and it is somewhat doubtful whether the final order, dismissing the complainant's bill, applies, or was intended to apply to the whole case, or only to that portion of it not disposed of by the first decree. The first decree granted all the relief sought by the complain-

ant as to the entire 7,180 acres, except so far as it was embraced in the deeds under which the heirs of Williams set up claim. That decree was, therefore, a final disposition of the whole case, except as to the land claimed by Williams' heirs.

Nothing remained to be done, except a conveyance to the complainant by the commissioner appointed for that purpose in the decree, upon the failure of Thornton, Taylor and Buckner's heirs to convey as directed. That decree, so far as appears, was never set aside, and no effort has ever been made, nor is any now made, to disturb it. Being final, the Court at a subsequent term, had no power to set it aside, and the decree, dismissing the complainant's bill, will therefore be considered a dismissal merely so far as relief was sought as to the land claimed by Williams' heirs. Whether there is any error in the decree upon this construction of it, we will now proceed to inqure.

And first, as to the title as set up and made out by the complainant. He exhibits the patent to Thornton, and also what purports to be the copy of a deed from the patentee to Taylor, as attorney of Philip Buckner, for 11,775 acres of the land embraced in the patent, bearing date in March, 1793, and recorded in the Court of Quarter Sessions in Mason county, in December, 1794. It is objected that this copy furnishes no evidence of a conveyance from Thornton to Taylor.

1st. Because the original deed was not properly authenticated for record.

2d. Because it was not recorded within the time required by law.

In virtue of the 10th section of the act of 1831, the last objection would be clearly not available, provided the deed had been duly proven or acknowledged. But such appears not to have been the case. The deed was admitted to record in Mason county upon this certificate :

*Caroline, June Court*, 1793.

"This deed was acknowledged and ordered to be recorded.          Test,          *William Nelson.*
          Truely recorded,
                    Test,          *John Pendleton, D. C.*"

"Caroline, June Court, 1793. This deed was acknowledged and ordered to be recorded.—Test, W. N.—Truely ecorded, Test,

Blanchard, &c.
vs
Taylor's Heirs.

J. P., D C."—
Held not to be
sufficient evi-
dence of an ac-
knowledgment
of the deed be-
fore a Court of
law of the coun-
ty in which the
grantor dwelt,
nor is there any
thing to show
that such is "the
usual manner
of authenticating
such acts," and
there is no seal.

The right and in-
terest of a *cestui
que trust* in land,
is subject to sale
under execution
since 1796, and
the legal title
passes by the
sale to the pur-
chaser. The land
is subject to sale
and passes by it
not a mere equi-
ty.

The act of 1785, provides that a deed, when the grantor is a non-resident, acknowledged before any Court of law of the county in which the party shall dwell, and when so acknowledged and certified by such Court in the manner such acts are usually authenticated by them, and offered to the proper Court, to be recorded within eighteen months after the sealing and delivering, it shall be as effectual as if it had been in the last mentioned Court. From the recital in the deed, Thornton was a resident of Caroline county, in Virginia, and this would be sufficient evidence of that fact, as has been held by this Court.

It might also be presumed that the deed was acknowledged by the grantor, although the certificate does not show that fact. But the certificate does not purport, nor can it be presumed to be in the usual manner of authenticating such acts. No seal is attached to it, and whether William Nelson was the Clerk or the Judge of the Court, is left entirely to inference and conjecture.

But whether the authentication was or not sufficient to authorize the deed to be legally admitted to record, is not material. The complainant expressly alledges that the copy is a true copy of the original deed, and this allegation is not denied by William's heirs. So far from controverting the title of Stith, they set up and rely upon title derived from him, and they rely upon title derived from no other source. This copy was read as evidence upon the trial, without objection, and it is, therefore, too late to raise an objection to it here. There was then, sufficient evidence of the conveyance from Thornton to Taylor, as attorney of Buckner, and the question arises as to the character and effect of that conveyance.

It clearly appears from its recitals, that the entire consideration moved from Buckner, and that Taylor acquired no beneficial interest under it whatever. He held the naked legal title merely, and that in trust for Buckner. The trust being manifest from the deed itself, the estate or land thereby conveyed was subject to sale under execution against Buckner, in virtue of the thirteenth section of the act of 1796, (1 *Stat. Law*, 443,) which declares that "estates of every description holden or possessed in trust, shall be subjebt to like debts and charges

of the persons to whose use, or for whose benefit they were or shall be respectively holden or possessed as they would have been subject to, if those persons had owned the like interest in the things holden or possessed as they own or shall own, in the uses or trusts thereof."

Buckner, in 1795, as we have seen, conveyed by deed duly recorded, the land or 7,180 acres thereof to Stith, which upon his death, descended to his heirs, provided he had not parted with his title. Under such circum-stances had Stith's heirs such an interest as was subject to execution? We think they had. Stith by the con-veyance from Buckner, acquired all his interest and oc-cupied his attitude in reference to Taylor, as trustee, and whatever interest Stith had, descended upon his death to his heirs. We are not aware that this question has been expressly settled by this Court, but the principle was in effect, settled in *Strode* vs *Churchill*, (2 *Litt.* 12.) In that case slaves were held in trust for several *cestui que trusts*, who divided them among themselves, and the the slaves thus alloted to each, were held subject to exe-cution for the debts of each severally. But the proposi-tion is too plain to require either argument or authority that Taylor held the title in trust for Stith, after he ac-quired Buckner's interest, and for Stith's heirs after his death; and we have as little doubt that the interest of the heirs in virtue of the statute referred to, was subject to execution.

*A cestui que trust conveyed land, the grantee died. Held that his heirs upon whom his right under the deed passed, had such an in-terest in the land as might be sold under execution.*

Whether the land, when Blanchard purchased under execution against Stith's heirs, was or not held adversely by Williams' heirs or those claiming under them, would not be important. Under the act of 1828, land, although in adverse possession, is still subject to execution, as held by this Court in *Frizzle* vs *Veatch*, (1 *Dana*, 211,) and in *Ring* vs *Gray*, (6 *B. Monroe*, 368.)

*Land held ad-versely to the de-fendant in the execution is lia-ble to sale under the execution:— (1 Dana, 211; 6 B. Monroe.)*

But it is important to enquire what interest or title Blanchard acquired by his execution purchase and the Sheriff's deed, and in considering this question we must first determine as to the validity and effect of the con-veyance from Stith's heirs to Blanchard in 1835, prior to the sale under execution.

WHARF, &c.
  vs
COTTON's Ex's.
It is sufficiently established by the testimony, that the land in contest at the time of those conveyances, was in the adverse possession of Williams' heirs or those claiming under them. It is true Williams' heirs claimed to hold under a deed purporting to be made by one Kissam, as attorney in fact for Stith, and hence it is contended that as the possession was held under the same original title as that claimed by the heirs, that it was not adverse and that consequently the conveyances were not champertous; and in support of this position the case of *Chrisman* vs *Gregory's heirs*, (4 *B. Monrae*, 474,) is referred to. That case when examined, will be found not to sustain the principle contended for. The question here presented, did not arise in that case. The parties here claimed the land as their own, they did not look to Stith or his heirs for title, but claimed it under a deed which had been made to their ancestor and duly recorded, for near forty years. The possession under it was adverse, and would have been so had the deed been made directly by Stith himself. The construction given by this Court to the act of 1824, (1 *Stat. Law*, 285,) in *Lillard* vs *McGee*, (3 *J. J. Marshall*, 475,) and other cases, clearly embraces this case, and renders the conveyances in question void.

The land which is held in trust, is subject to sale by the statute to satisfy the debt of *cestui que use*, not the mere use, and by such sale the trustee is divested of the legal title, and it passes to the purchaser: *Eastland* vs *Jordan*, (3 *Bibb*, 186.)

The sale under execution, therefore, was not affected by them, and the purchaser acquired thereby, as the record now stands, and upon the supposition that the interest conveyed by Buckner to Stith descended to his heirs, a fee simple estate in the land, the legal as well as the equitable title. The statute declares that estates of every kind, holden in trust, not the use or uses therein, shall be subject to the debts of the *cestui que trust*. It is the *thing* itself which the statute authorizes to be subjected. Prior to the statute the *estate* could only be reached in a Court of equity. The statute was designed to effect the same object at law by subjecting the entire estate, and such has been the construction given to it by this Court: *Eastland* vs *Jordan*, (3 *Bibb*, 186;) *Strode* vs *Churchill*, *supra*, and other cases.

From this view of the case, it results that the complainant's remedy was ample at law, and the main ground

alledged for resorting to a Court of equity fails. He alledges that he could not prosecute an ejectment, because the legal title by the deed of Thornton, passed to Taylor instead of Buckner, and Taylor, as he was informed, had died many years before. Whether Taylor was living or had died, and the title had descended to his heirs at the time of the sale under execution, was not material. Wherever it was it was still held merely in trust, and passed by the sale.

But the complainant seeks to be quieted as to the incumbrance of the deed by Kissam as attorney in fact of Stith to Williams, and that the persons in possession of the land may be decreed to surrender it. Assuming, however, as we do, that the complainant had ample remedy at law, this would not constitute sufficient ground for resorting to a Court of equity for relief.

In view of the whole case, therefore, we are of opinion the Court below was right in dismissing the complainant's bill, but erred in not dismissing it without prejudice to his remedy at law.

Wherefore, the decree is reversed and the cause remanded with directions to dismiss the complainant's bill with costs, as to the heirs of Williams and those claiming under them, and as to so much of the lands embraced by their deeds, but without prejudice to any remedy the complainant may have at law.

*Beatty* for appellant; *McClung & Taylor* for appellee.