George Andrews, J.,
delivered the opinion of the Court.
The complainant, Sharp, filed the bill in this cause on the 17th day of March, 1866, alleging that Joseph R. Hunter, deceased, was, at the time of his decease, indebted to complainant in the sum of $779.00, and interest. It is further alleged that said Hunter died a non-resident of this State, and that he was, at the time of his death, the owner of a certain lot of ground situated in Shelby County, in this State, which lot is particularly described in the bill.
The defendants named in the bill are the widow and children of Hunter, and one Lowry and his tenant, who are charged to be in possession of the premises. The bill prays for the issuance of a writ of attachment against *392 the said lot, and that it be attached and sold to pay the demand of the complainant.
A subsequent amendment was made to the bill charging that more than six months had elapsed since the death of Joseph R. Hunter, and that no one could be procured to administer upon his estate; and upon this a special administrator was appointed by the Chancery Court.
Upon filing the bill, the complainant executed and filed an attachment bond, but no attachment was in fact issued.
The defendant, Lowry, answered, stating that he is owner in fee of the lot, and that he bought it in good faith from 'Hunter, on the 31st day of December, 1861, and paid him therefor at the. time a consideration estimated at $3,000, and received from him. a deed, which is exhibited with the answer. He alleges that said deed was improperly admitted to record on the 14th day of March, 1866, (three days previous to the filing of the bill,) and that the requisite authentication having been completed, it was again filed for registration on May, 2d, 1866.
He alleges that immediately after the execution of said deed, he took possession of said property, and has ever since held possession thereof.
The deed exhibited is a warranty deed from Joseph It. Hunter to "VY. A. Lowry, bearing date December 31st, 1861, and aoknowledging the receipt of the consideration of $3,000. It is not disputed that Lowry is a purchaser for valuable consideration under this deed.
This deed was registered on the 14th of March, 1866, ripon proof of the execution made by M. S. Jay, one of *393 the subscribing witnesses, 'which it is admitted was insufficient to entitle it to registration.
On the 2d day of May, 1866, further proof was made of the execution of the deed by Hunter, and a further certificate of probate being annexed to the deed, it was again filed for registration, May 2d, 1866.
The complainant in this suit had actual notice at the time of filing his bill, that Lowry was in possession of the premises, claiming title by purchase from Hunter.
This attachment proceeding is brought under section 3455, sub-section 7, of the Code, which provides that “Any person having a debt or demand due at the commencement of an action, * * * * may sue out an attachment at law or in equity against the property of a debtor or defendant. * * * * Where any person liable for any debt or demand residing out of the State, dies, leaving property in the State.”
Section 3461 of the Code, provides that attachments may be sued out in the Chancery Court upon debts or demands of a purely legal nature, except causes of action founded on suits without first obtaining a judgment at law.
The complainant claims that the deed made by Hunter to Lowry in 1861, not having been legally registered when the bill was filed, on the 17th of March, 1866, a lien was fixed upon the land at that time by the filing of the bill; that the deed was void as against the lien of the bill; and that no writ of attachment was necessary in order to render the attachment effectual.
By section 3507 it is declared that “any sale, transfer, or assignment, made after the filing of an attachment bill *394 in Chancery, or after the suing out of an attachment at law, of property mentioned in the bill or attachment, as against the plaintiff, shall bo inoperative and void.”
The property sought to be attached is described in the bill in this cause; and there is no doubt that in such cases, if the writ is issued and levied with due diligence, any transfer made after the filing of the bill, and previous to the issuance or actual levy of the attachment, would be void: 3 Head, 392; 2 Cold., 498; 6 Cold., 348. But in this case the writ of attachment was not actually issued and levied until a year after the filing of the bill*
The statute, though it makes void all transfers' of the property made after the filing of the bill, evidently contemplates the actual issuance of a writ of attachment, as in cases at law. I do not think that, strictly speaking, a lien upon the property described, is created by the mere filing of the bill, and without levy of a writ of attachment. Until the levy of the attachment, no right or interest in or to the property' vests in the attaching plaintiff The statute forbids the defendant to sell the property; but until levy of the attachment, gives no right to the plaintiff, or to the officers of the law, to take possession of it or control it, or disturb the possession of the defendant; and without the levy of the attachment, the Court could not make an order for the sale of the property. This section of the statute, therefore, does not create a lien. But'the filing of the bill operates as a lis ■pendens, during which all transfers are void, and the property is thus practically secured until the lien of the attachment can be made to adhere to it. I am unable to see that this effect of the bill is done away with by the *395 delay which occurred in this case in the issuance of the attachment, and any transfer which might have been made of this property after the filing of this bill would, therefore, have been void as against the complainant.
But while the property, after the filing of the bill, thus lay open to the complainant’s attachment, the defendant procured a new probate and registration of his deed, and now claims that when the attachment was issued and levied, his deed was regularly recorded, and that no lien having actually attached previous to the registration of his deed, the attachment could have no effect as against the deed.
As the deed has no effect as against attaching creditors until registered, (11 Hum., 569,) and then only becomes operative, there is an apparent plausibility in the argument that the putting a deed upon record is, as against a creditor, simply giving it effect as a deed; and that it is, therefore, equivalent, as far as the creditor is concerned, to a sale or transfer made at the moment of registration.
The metaphysical character of this argument lays it open to suspicion. The answer is simply, that the two things are not the same. The putting upon record of a deed is not a transfer or a sale. The registration is necessary to make the sale effectual as against the creditor, but the registration is not the sale; and the giving effect by registration of the deed to a bona fide sale previously made, is not the evil which the statute was designed to remedy.
It is urged for the complainant, that, as the unregistered deed' was void as against the plaintiff, and as the statute avoids all transfers made after the filing of the *396 bill, the procuring of a new authentication to the deed, and placing it upon record, was, in effect, a transfer of the property, such as is avoided by the statute; and that, therefore, the new registration of the deed must go for nothing, and that the land lay open to the complainant’s attachment, afterwards levied, notwithstanding the new registration.
The evil sought to be prevented by this section of the Code, was the surreptitious transfer of the title to property while the creditor was actually prosecuting his remedies against the debtor. But it is hardly supposable that it was the intention of the Legislature to prohibit innocent purchasers of the property from putting their titles upon record at any time before an adverse lien has attached. The claim of the bona fide purchaser for valuable consideration is as meritorious as that of the creditor, and no reason appears why the Legislature or the courts should favor the one more than the other.
In the case of bills filed by judgment creditors to subject equitable assets, under sections 4283-6 of the Code, the statute expressly gives a lien from the filing of the bill; and it is to be presumed that the Legislature would have made similar provision in the present class of cases, if it had intended that the lien should exist.
It follows, that, if there be no defect in the probate and registration of the defendant’s deed, made on the 2nd day of May, 1866, after the filing of the bill, but before the levy of the attachment, the attachment must give way to the registered deed.
The Code, section 2055, provides, that if all the subscribing witnesses but one be dead, insane, blind, or deaf *397 and dumb, tbe surviving witness may prove tbe deed before tbe clerk, tbe bandwriting of tbe other witnesses being proved by some other person
In tbe present case, there were two attesting witnesses to tbe deed. One of them — Jay—proved tbe deed in due form before tbe clerk. Brown, the other witness, was dead, as, is proved in this record, and bis band writing was proved before tbe clerk, by tbe testimony of another witness. Tbe clerk, thereupon, certified upon tbe deed that R. P. Bateman appeared before him ■ “and made oath that be is well acquainted with tbe band-writing of B. F. Brown, and that tbe signature of said Brown, one of tbe subscribing witnesses to tbe within, is in bis own bandwriting.”
The objection now taken to this certificate of probate, is, that it does not certify that tbe attesting witness, Brown, was proved to be dead, insane, blind, or deaf and dumb; that without such proof, the clerk bad no jurisdiction to make tbe probate by proof of bis handwriting, and that tbe fact of tbe death or insanity, etc., being a jurisdictional fact, must appear in tbe certificate, or tbe certificate will be void; that tbe clerk must actually receive proof of tbe decease of tbe subscribing witness, and must certify that fact in bis certificate.
The statute prescribes no form for the certificate of probate in a case like tbe present. It gives tbe forms to be employed in several specified cases, and then provides generally, in section 2066, that tbe certificate of probate shall be varied so as to adapt it to tbe various modes of proof prescribed.
*398 We are unable to arrive at the conclusion that the authentication of this deed is a nullity, by reason of this omission in the certificate.
The statute nowhere declares, that, in taking and certifying the proof of the handwriting of a deceased witness, the clerk shall also hear proof and certify to the fact of his death. Undoubtedly it would be regular, and proper that he should do so, but his action is not void if he omit it.
If the subscribing witness is not dead or disqualified, the clerk has no authority to authenticate the deed by proof of his handwriting. But the clerk is not necessarily compelled to swear witnesses to prove the death. He may himself know the fact of the death; and if the fact exist, and were truly set forth in the certificate, no objection could be taken upon the ground that the clerk had certified to the fact from his own knowledge, instead of from the proof of witnesses. The statute does not say that he shall swear witnesses to the fact of death, or make any judicial determination as to it. Certainly, he ought to be satisfied of the fact before taking proof as to the handwriting; but there is no more need of his swearing witnesses to the fact and judicially determining its existence, than there would be in hearing testimony as to the fact of coverture before taking the acknowledgment of a married woman.
The clerk must certify, in the absence of a statutory form, every act done by him which is essential to the validity of the authentication. But it is not absolutely essential that he certify to facts which are not acts done *399 by him, which be does not judicially determine, and which being no better known to him than to other members of the community, are the reasons on which his official action is based, but not a part of his official action. The certificate of the clerk is merely the record of his own official action; not the judgment of a court judicially ascertaining facts and adjudicating rights between parties.
So far as the provisions of the Code throw any light upon the question, it is in favor of the above views. Section 2057 declares, that when the witness or witnesses appear before the clerk, “he shall propound to them such questions as he may find requisite to establish the facts necessary to authenticate the instrument, whether it be the identity of the maker, his handwriting, or the handwriting of a non-resident or deceased witness.”
Section 2077 of the Code provides, that when a feme covert is unable from age, sickness, or debility, or other cause, to appear before the clerk, he shall issue a commission to any Justice of the Peace to take'her privy examination. The form of this commission, and also of the certificate of privy examination, to be returned therewith, are prescribed; but in neither commission nor certificate is there any allusion to the circumstances of disability, which alone can authorize the proceeding; and the certificate does not even allude or refer to the commission, under the authority of which it is made.
It has been decided in the Supreme Court of the United States, that a certificate of acknowledgment is valid though the official character of the person taking the acknowledgment does not appear upon the certificate. *400 Van Ness vs. Bank of United States: 13 Pet., 17. In tkat case Taney, C. J., says: “We perceive nothing in the Maryland Acts of Assembly •which require Justices of the Peace or other officers, to describe in their certificates, their official characters. . It is no doubt usual and proper to do so, because the statement in the certificate is prima fade evidence of the fact where the instrument has been received and recorded by the proper authority. But such a statement is not made necessary by the Maryland statutes. And whenever it is established by proof that the acknowledgment was made before persons authorized to take it, it must be presumed to have been taken by them in their official capacity and their official characters are sufficiently shown by parol evidence, or by the admission of the parties, we see no reason for requiring more, where the Acts of the Legislature have not required it.”
As to the precise point stated in the above quotation, the cases are however, not uniform, and it is not proper or necessary now to decide. See 2 Phil. Ev., (Cow. & Hill,) note 479, p. 585, 5 ed.
When we consider the difficulty of securing compliance on the part of officers with the plain and concise forms of certificates prescribed in the Code, and the multitude of cases in our Courts and in our Beports arising from this neglect, we may well despair of our titles if we are to lay down a rule which would require every certificate of acknowledgment, where the form 'is not prescribed, to contain all the recitals contended for in the argument of the complainant.
The probate and registration of Hunter’s deed, made *401 on the 2d of May, 1866, must be held sufficient; and having been made before the actual levy of the complainant’s writ of attachment, and before any lien had attached to the premises in favor of complainant, the attachment levied after .this registration was ineffectual, and the defendant’s title under that deed is superior to the attachment. The complainant can take nothing against the defendant, Lowry; and the decree of the Chancellor dismissing the bill must be affirmed.