ELECTRONIC CITATION:  2005 FED App. 0004P (6th Cir.)
File Name:  05b0004p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  DANIEL W. CLUXTON,        )
                                         )
        Debtor.        )
_____ )
                                         )
DANIEL W. CLUXTON,        )
                                         )
        Debtor-Appellant,        )
                                         )
        v.        )     No. 04-8028
                                         )
FIFTH THIRD BANK, ET AL.,        )
                                         )
        Appellees.        )
_____ )

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division, at Cincinnati.
No. 02-17602.

Argued: February 2, 2005

Decided and Filed:  May 19, 2005

Before: COOPER, GREGG, and LATTA, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  David A. Kruer, DEARFIELD, KRUER & WARREN, Portsmouth, Ohio, for Appellant.  John L. Day, Jr., WELTMAN, WEINBERG & REIS, Cincinnati, Ohio, Francis J. DiCesare, Cincinnati, Ohio, for Appellees.  **ON BRIEF:**  David A. Kruer, DEARFIELD, KRUER & WARREN, Portsmouth, Ohio, for Appellant.  John L. Day, Jr., WELTMAN, WEINBERG & REIS, Cincinnati, Ohio, Francis J. DiCesare, Cincinnati, Ohio, for Appellees.

_____

**OPINION**

_____

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. In this case, the bankruptcy court denied confirmation of the Debtor's chapter 13 plan. The bankruptcy court found that the Debtor's proposed "cramdown" of the debt on his mobile home violated the anti-modification provisions of § 1322(b)(2) because the court found that the mobile home is part of the real property. Daniel W. Cluxton, the "Debtor," has appealed arguing that the mobile home is personal property. For the reasons that follow, the Panel AFFIRMS the bankruptcy court.

## I. ISSUE ON APPEAL

The issue on appeal is whether the mobile home constitutes "real property that is the Debtor's principal residence" such that the chapter 13 plan being proposed by the Debtor violates the anti-modification provisions of 11 U.S.C. § 1322(b)(2).[1]

## II. JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction under 28 U.S.C. § 158(a)(1), which allows district courts, and this Panel, under § 158(b), to review interlocutory orders of bankruptcy courts. On October 26, 2004, the Trustee and Debtor filed a joint statement requesting leave to appeal. The Panel granted permission to the Debtor to bring this appeal.

Conclusions of law are reviewed de novo. *See Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted). The determination whether a plan provision violates the Bankruptcy Code is a legal conclusion reviewed de novo.

## III. FACTS

_____

[1] The Bankruptcy Code is contained in 11 U.S.C. §§ 101-1330. Unless stated to the contrary, all future statutory references are to the Bankruptcy Code, e.g., "§ ____."

In May 1999, the original owners of the Debtor's mobile home surrendered the certificate of title of the mobile home to the Adams County auditor so that the mobile home could be sold with real property to the Debtor. The Debtor financed his purchase through a loan from Fifth Third Bank, granting a mortgage on the property and mobile home. From the time that the Debtor purchased the mobile home and the real property, both have been taxed as real estate.

The Debtor asserts that the mobile home is personal property because it is not affixed to the real property. The mobile home sits on sixteen by sixteen inch block piers with wood wedges between the piers and a steel frame. Each pier rests upon concrete pads buried four inches below the soil rather than sixteen inches beneath the frost line as required by state regulations. The vinyl skirting that came with the mobile home from the manufacturer has been replaced by concrete blocks stacked around the base, some without mortar. The block skirting does not support any weight and appears to have been installed only for cosmetic purposes. Plumbing, electricity and a septic system have all been connected to the mobile home. The record on appeal discloses no other improvements.

## IV.    DISCUSSION

Section 1322(b)(2) provides:

> (b)  Subject to subsections (a) and (c) of this section, the plan may–
> (2)  modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

In *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106 (1993), the Supreme Court ruled that a Chapter 13 debtor may not use § 506(a) to strip down those types of mortgages covered by § 1322(b)(2).

## A.

Pursuant to Ohio law, a mobile home may become part of real property. Ohio law requires the owners of mobile homes to pay real estate taxes rather than personal property

taxes when, among other things, "[t]he home is affixed to a permanent foundation." Ohio Rev. Code § 4503.06(B). More specifically,

> [A]n owner of a manufactured or mobile home that will be taxed as real property pursuant to division (B) of section 4503.06 of the Revised Code shall surrender the certificate of title to the auditor of the county containing the taxing district in which the home is located.

Ohio Rev. Code § 4505.11(H)(1).

The Debtor does not dispute that his mobile home was treated as part of the real property according to these statutes. Nor does he dispute that when he obtained the loan to buy the property and mobile home, it was treated as such by the bank and that he granted a mortgage which encumbered the mobile home and the real property. Rather, the Debtor asserts that the county auditor erred by allowing the mobile home to be treated as part of the real property because it was not affixed to the real property in the manner required by the statute.

The bankruptcy court determined that based upon the Ohio statute, the Debtor's mobile home is part of the real estate. In *In re Kroskie*, 315 F.3d 644 (6th Cir. 2003), the Sixth Circuit Court of Appeals conducted a similar analysis under Michigan law. The Sixth Circuit noted "the general rule that a security interest in a fixture can be perfected through a properly recorded mortgage on real estate does not govern where, as here, there is a specific statute dealing with mobile home security interests." *Id.* at 647. The Sixth Circuit also quoted *In re Bencker*, 122 B.R. 506, 511 (Bankr. W.D. Mich. 1990) "[T]he specific provisions of [the] Mobile Home Commission Act dictate how legal ownership is transferred, and it governs over the more general provisions of the Uniform Commercial Code." *Kroskie*, 315 F.3d at 647.

In the present case, the mobile home lost its status as personal property when the original owners surrendered the certificate of title to the county auditor and the mobile home began to be treated as real property. The Ohio statute provides that once the certificate of title is surrendered and the mobile home becomes part of the real property, the only way the mobile home can regain its status as personal property is with the consent of any secured parties. *See* Ohio Rev. Code § 4505.11(H)(4). Moreover, Ohio courts have held that a failure to precisely follow the statute by a county auditor does not negate the

mobile home becoming part of the real property by operation of law. *See Synder v. Hawkins*, 2004 WL 4882 (Ohio Ct. App. Jan. 9, 2004).

In the present case, the original owners represented that the mobile home was affixed to a permanent foundation and surrendered the certificate of title to the county auditor. The Debtor sought and received a mortgage because the mobile home was part of the real property. Accordingly, the Panel holds that the mobile home became part of the real property by operation of the statute. This rationale, standing alone, justifies affirmance of the bankruptcy court's ruling.

**B.**

Additionally, the bankruptcy court carefully considered the traditional fixture analysis, set forth in *Teaff v. Hewitt*, 1 Ohio St. 511 (1853), and also determined that the mobile home was affixed to the real property. *Teaff* discusses the common law standard governing the determination of when personal property becomes a fixture:

> 1st. Actual annexation to the realty, or something appurtenant thereto.
> 2d. Appropriation to the use or purpose of that part of the realty with which it is connected.
> 3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold–this intention being inferred from the nature of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

*Id.* at 530 (emphasis in original). Ohio courts have recognized a relaxation of the fixture test in other contexts. *See Cleveland Elec. Illum. Co. v. Cont'l Express*, 733 N.E.2d 328 (Ohio Ct. of Common Pleas 1999) (utility pole and attached equipment); *Masheter v. Boehm*, 295 N.E.2d 917 (Ohio App. 1973), *rev'd on other grounds*, 307 N.E.2d 533 (Ohio 1974) (machinery used to manufacture steel parts).

The bankruptcy court analyzed the three prongs of the common law test. First, although it might be slight, the mobile home is attached to the property, via the electrical and plumbing. Second, there was a clear adaptation of the mobile home to the use and enjoyment of the realty. The court noted that the realty would be of little or no use to the

Debtor in the absence of the mobile home, and the Debtor would need to replace it with another or similar structure if it were removed. Third, the original owners evidenced an intention to annex the mobile home to the real property when they submitted the certificate of title to the county auditor, thereby causing it to be taxed as real property. Further, the Debtor also evidenced an intention for the mobile home to be treated as part of the real property when he applied for and obtained a mortgage on the mobile home and the real property. The bankruptcy court found that the mobile home took on such a character as to inform other persons that the Debtor intended to make it a permanent part of the real property.

The three prongs of the *Teaff* analysis are met. The bankruptcy court also correctly determined that the mobile home is real property under Ohio common law.

## V.  CONCLUSION

The decision of the bankruptcy court is **AFFIRMED**.