RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: CHRISTOPHER C. REINHARDT and TINA
M. REINHARDT,

*Debtors.*

_____

No. 08-3309

CHRISTOPHER C. REINHARDT and TINA M.
REINHARDT,

*Debtors-Appellees,*

*v.*

VANDERBILT MORTGAGE AND FINANCE, INC.,

*Creditor-Appellant.*

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Cincinnati.
No. 06-14376—Jeffery P. Hopkins, Bankruptcy Judge.

Argued: March 11, 2009

Decided and Filed: April 29, 2009

Before: CLAY and GIBBONS, Circuit Judges; GREER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Thomas L. Canary, Jr., Lexington, Kentucky, for Appellant. **ON BRIEF:**
Thomas L. Canary, Jr., Lexington, Kentucky, Gregory A. Stout, MAPOTHER &
MAPOTHER, Louisville, Kentucky, for Appellant.

_____

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

1

——————————

**OPINION**

——————————

CLAY, Circuit Judge. Creditor-Appellant Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") appeals the order of the bankruptcy court, overruling Vanderbilt's objection and confirming the reorganization plan proposed by Debtors Christopher C. Reinhardt and Tina M. Reinhardt. Under Debtors' plan, Vanderbilt's rights as a secured creditor were modified so as to reduce its secured claim on Debtors' mobile home and real estate to the current estimated value of the properties. On appeal, Vanderbilt contends that the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.*, forbids the modification of Vanderbilt's secured claim because it pertains to real property that is Debtors' principal residence. For the following reasons, we **AFFIRM** the bankruptcy court's order.

**BACKGROUND**

On August 15, 2002, Debtors purchased a parcel of three acres of land in Ohio and a mobile home in which to live on the real property. Debtors paid no money down, financing the purchase of the land through a mortgage agreement and financing the mobile home through a retail installment sale contract containing a security agreement. The sale contract provided: "Buyer will not let the Manufactured Home become part of any real estate. Buyer agrees that the Manufactured Home sold by the terms of this contract is personal property. Unless Seller gives prior written consent, Buyer shall not allow the Manufactured Home to become a part of real estate or to otherwise lose its status as personal property under applicable law[.]" (Joint Appendix at 250.) Vanderbilt obtained a security interest in both the real property and the mobile home.

On December 12, 2006, Debtors filed for bankruptcy protection under Chapter 13 of the Code. In their bankruptcy petition, Debtors included the mobile home and the land on which the home sits in their schedule of assets. They listed the mobile home as personal property valued at $12,000, and listed the land as real property valued at

$3,000.  They listed the total value of Vanderbilt's secured claim on the mortgage and mobile home as $37,399.87.  On December 27, 2006, Vanderbilt filed a proof of secured claim totaling $44,823.65.

In their proposed plan of reorganization filed on December 15, 2006, the Debtors sought a "cramdown" of Vanderbilt's secured claim, proposing that only $15,000 of Vanderbilt's outstanding claim–i.e., the current estimated value of the land and the mobile home–be secured.[1]  Under the proposed plan, Debtors would pay Vanderbilt's $15,000 secured claim in monthly installments, with the remainder left as a general unsecured claim.  Debtors filed an amended reorganization plan on February 13, 2007, though they left the proposed cramdown of Vanderbilt's secured claim unchanged.

On February 22, 2007, Vanderbilt filed an objection to Debtors' proposed cramdown and bifurcation of its claim into secured and unsecured components.  Because the parties stipulated that Vanderbilt held a valid mortgage on Debtors' real property and a valid lien on the title to the mobile home, the only issue in dispute was whether the proposed cramdown was permissible under the Code.

On November 13, 2007, the bankruptcy court overruled Vanderbilt's objection, and on November 15, 2007, it confirmed the proposed plan.  In overruling Vanderbilt's objection, the bankruptcy court cited 11 U.S.C. § 1322(b)(2), which permits a bankruptcy court to modify secured creditors' rights with respect to any claim "other than a claim secured only by a security interest in real property that is the debtor's principal residence."  The court then found that although Debtors' mobile home qualified as the "debtor's principal residence" under the newly amended Code, a modification was still permissible because the mobile home did not constitute "real property."  On November 21, 2007, Vanderbilt timely appealed the bankruptcy court's order, and then

---

[1]A "cramdown" is a reduction of the secured balance due on a home mortgage loan ordered by a bankruptcy court.  A bankruptcy court may reduce the balance of the secured claim to the current appraised value of the home, while the amount of the claim in excess of the current property's value becomes an unsecured claim.  *See* 11 U.S.C. § 506(a).  The term "cramdown" comes from the fact that the reduction is enforced over the secured creditor's objection.  *See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 450-51 (6th Cir. 2009).

filed for direct appeal to this Court pursuant to 28 U.S.C. § 158(d). On March 20, 2008, this Court accepted the request to take the case on direct appeal.

## DISCUSSION

### I.    Standard of Review

When this Court hears an appeal from an order of a bankruptcy court, we review the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *In re Federated Dept. Stores, Inc.*, 328 F.3d 829, 832 (6th Cir. 2003).

### II.    Analysis

A debtor reorganizing under Chapter 13 may take one of three approaches to an allowed secured claim in order to receive court approval for the plan: the debtor may obtain the secured creditor's approval of its reorganization plan; the debtor may modify, or cram down, the creditor's secured interest; or the debtor may transfer the collateral securing the creditor's interest to the creditor. 11 U.S.C. § 1325(a)(5); *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 956-57 (1997). With respect to the cramdown option, a bankruptcy court may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" § 1322(b)(2) (emphasis added). Under the Code, "'debtor's principal residence' (A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer." § 101(13A). The definition of "debtor's principal residence" in § 101(13A) was added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"); prior to BAPCPA, the term was undefined. H.R. Rep. No. 109-31, pt. 1, at 72 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 140.

"Real property" is undefined in the Code. *See* § 101. Under Ohio law, a mobile home is generally considered personal property, and only becomes real property if

(1) "[t]he home is affixed to a permanent foundation . . . and is located on land owned by the owner of the home," and (2) [t]he certificate of title for the [mobile] home has been inactivated by the clerk of the court of common pleas that issued it[.]" Ohio Rev. Code § 5701.02(B)(2).

The bankruptcy court found that for Vanderbilt's claim to fit within the exception to the modification provision in 11 U.S.C. § 1322(b)(2), the mobile home not only had to be the debtor's principal residence, but also had to be real property. The court found that under Ohio law, Debtors' mobile home was not "real property," because it was not attached to the land, and because Debtors never surrendered their certificate of title to the mobile home. The court therefore found that the anti-modification exception in § 1322(b)(2) did not apply, and overruled Vanderbilt's objection.

On appeal, Vanderbilt argues that its secured claim falls within the anti-modification exception because its claim is "secured only by a security interest in real property that is the debtor's principal residence," as per § 1322(b)(2). Vanderbilt does not contest the bankruptcy court's finding that the mobile home is personal property under Ohio law.[2] Rather, Vanderbilt contends that because the definition of "debtor's principal residence" specifically includes mobile homes that are not attached to the land, and because Vanderbilt also has a security interest in the real property beneath the home, this Court should find that Vanderbilt meets the anti-modification requirement without resorting to the definition of real property under Ohio state law. This argument presents an issue of first impression for this Court: whether § 1322(b)(2) of the Code precludes the modification of a secured interest in an unattached mobile home if the secured creditor also holds a security interest in the real property beneath the home.

"[T]he starting point in any case involving the meaning of a statute[] is the language of the statute itself." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440

---

[2]Vanderbilt concedes that the certificate of title to the mobile home remains active, and although it does not expressly concede that the mobile home is not affixed to the land, the bankruptcy court made this finding, and Vanderbilt does not challenge it on appeal. *Appellant's Br.* at 28. This Court therefore need not address this finding, although we note that the security agreement prohibited Debtors from converting the mobile home into real property under Ohio law.

U.S. 205, 210 (1979). Pursuant to § 1322(b)(2), a secured claim cannot be modified if the claim "is secured only by a security interest in real property that is the debtor's principal residence." According to the grammatical structure of that clause, "that is the debtor's principal residence" modifies "real property." Therefore, if the claim does not pertain to "real property," it does not matter whether the claim is on a "debtor's principal residence." The provision plainly contains two requirements: that the property be real property and that it be the debtor's principal residence. This interpretation is consistent with that of the only other federal appellate court to have addressed the issue since the enactment of BAPCPA. *See In re Ennis*, 558 F.3d 343, 345-46 (4th Cir. 2009) ("The prohibition against modification in § 1322(b)(2) has two distinct requirements: first, the security interest must be in real property, and second, the real property must be the debtor's principal residence.").

Because § 1322(b)(2) clearly contains a separate requirement that the "debtor's principal residence" must be real property, there is no need to examine BAPCPA's legislative history to determine Congress' intent in adding the definition. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (quotations and citations omitted). Regardless, a search of the scant legislative history does not affect this analysis. The only reference to the new definition of "debtor's principal residence" that this Court has found is from the Committee Report of the House Judiciary Committee, which states:

> Section 306(c)(1) amends section 101 of the Bankruptcy Code to define the term "debtor's principal residence" as a residential structure (including incidental property) without regard to whether or not such structure is attached to real property. The term includes an individual condominium or cooperative unit as well as a mobile or manufactured home, or a trailer.

H.R. Rep. No. 109-31, pt. 1, at 72 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 140. This passage does nothing more than recite the text of the new definition, and it certainly cannot be used to glean Congress' intent with respect to whether a creditor with a

secured claim encompassing both the mobile home and the land under it should fit within the anti-modification exception.  Vanderbilt  argues that Congress nevertheless evidenced its intent to expand the reach of "debtor's principal residence" by defining the term "incidental property," contained in the definition of "debtor's principal residence," to include mobile homes, fixtures and other items commonly found on the land in which a debtor's principal residence might be situated.  11 U.S.C. § 101(27B).  This argument is beside the point, for no matter how broad the definition of "debtor's principal residence," it still must also be "real property" for the anti-modification provision to apply.

Based on this interpretation of the anti-modification provision, Vanderbilt's secured interest in the real property on which Debtors' mobile home sits is irrelevant, because the real property in which Vanderbilt has a secured interest must *be* the debtor's residential home.  Vanderbilt argues that a "logical reading of § 1322(b)(2) in light of the new § 101(13A) is that to get the benefit of § 1322(b)(2) a creditor must have a security interest in real property [t]hat *contains* the debtor's principal residence[.]" *Appellant's Br.* at 25 (punctuation omitted) (emphasis added).  That Vanderbilt has to adjust the wording of the statute to reach its desired result shows the error of its interpretation.

Thus, the bankruptcy court was correct to analyze separately whether the mobile home qualified as real property.  Where the Code does not specifically address an issue that arises in bankruptcy, "the bankruptcy court looks to state law, to the extent that it does not conflict with the bankruptcy code[.]" *Giant Eagle, Inc. v. Phar-Mor, Inc.*, 528 F.3d 455, 459 (6th Cir. 2008) (citations omitted); *see also Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000).

Accordingly, both before and after the enactment of BAPCPA, bankruptcy courts in this circuit, recognizing that the Code does not define "real property," have looked to

state law to determine whether a mobile home constituted real property. *See, e.g., In re Cluxton*, 327 B.R. 612, 614 (B.A.P. 6th Cir. 2005) (affirming bankruptcy court's application of anti-modification provision to secured interest in debtor's mobile home because under Ohio law, debtor's surrender of mobile home's certificate of title rendered mobile home part of debtor's real property); *In re Davis*, 386 B.R. 182 (B.A.P. 6th Cir. 2008). The facts in *Davis* were nearly identical to this case: the debtor proposed cramming down the creditor's secured claim to both the debtor's mobile home and the debtor's real property on which the home was located. *Id.* at 184-85. The bankruptcy appellate panel found the creditor's claim could be modified because the mobile home was not real property under Ohio law. *Id.* at 185-86. The vast majority of federal courts to consider the issue post-BAPCPA have similarly held that § 1322(b)(2) allows the modification of a secured creditor's interest in a mobile home if that home is not considered real property under state law. *See Green Tree Servicing, LLC v. Harrison*, No. 07-2132, 2009 WL 82565, at *2 n.4 (W.D. La. Jan. 12, 2009) (collecting cases).

Vanderbilt argues that interpreting § 1322(b)(2) as separately requiring that the claim pertain to real property as defined by state law creates a conflict between federal and state law, and the Code must therefore preempt state law. Conflict preemption "occurs either where it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as reflected in the language, structure and underlying goals of the federal statute at issue." *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 562-63 (6th Cir. 1998). Specifically, Vanderbilt argues that the definition of "debtor's principal residence" in the Code instructs bankruptcy courts to disregard whether a mobile home is affixed to real property; under Ohio state law, however, whether a mobile home is affixed to the land determines whether or not the home is subject to real property taxes, Ohio Rev. Code § 4503.06(B)(1)(a). *Appellant's Br.* at 28.

These different requirements do not constitute a conflict. First, compliance with both the federal bankruptcy statute and the Ohio tax statute is possible; an Ohio citizen's obligation to pay taxes on his or her unattached mobile home as personal property is

completely unrelated to how a federal bankruptcy court would treat that same mobile home in determining whether to allow a cramdown. Second, although Congress' decision to leave § 1322(b)(2) unchanged may limit the impact of the new definition of "debtor's principal residence" on the anti-modification provision in instances where mobile homes are not considered real property under state law, that does not mean that Congress' objectives in adding the definition of "debtor's principal residence" have been impeded. The definition of "debtor's principal residence" in § 101(13A) applies to the entire Code, and the definition contains no language that exclusively limits its application to the anti-modification context. Thus, the extra limitation that the "real property" requirement imposes on the anti-modification provision does not create an internal contradiction; it simply limits the new definition's immediate applicability in states like Ohio, or until Congress finds other statutory uses for the definition.

Because Ohio state law is clear that Debtors' mobile home is not real property, the bankruptcy court correctly held that it could modify Vanderbilt's secured claim on the mobile home under § 1322(b)(2), despite Vanderbilt's secured interest on both the mobile home and the real property beneath it. *See* Ohio Rev. Code § 5701.02(B)(2).

## CONCLUSION

For the reasons stated herein, the bankruptcy court's order confirming Debtors' reorganization plan is **AFFIRMED**.