NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0413n.06

No. 12-4174

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 26, 2013*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| In re: JAMES A. WALLINGFORD, )<br>)<br>Debtor, )<br>)<br>MELODY WALLINGFORD, )<br>)<br>Debtor )<br>)<br>‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )<br>)<br>JAMES A. WALLINGFORD, )<br>)<br>Plaintiff-Appellee, )<br>)<br>MELODY F. WALLINGFORD, )<br>)<br>Plaintiff-Appellee, )<br>)<br>v. )<br>)<br>GREEN TREE SERVICING, LLC, )<br>)<br>Defendant-Appellant. )<br>) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION |

Before:  MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  The Wallingfords own a mobile home in Ohio, along with the land that it sits on.  For purposes of the anti-modification provision encompassed in 11 U.S.C. § 1322(b)(2), we are now asked whether that home constitutes "real property."  We conclude that it does not, and **AFFIRM** the decision of the district court.

I.

In 1998, James and Melody Wallingford purchased land located at 8045 Yockey Road in Georgetown, Ohio. As part of the deal, they also bought a mobile home to sit atop the land. This purchase was financed through a loan provided by Homes R Us. To secure the loan, the Wallingfords executed an open-ended mortgage on the land that also covered the purchase of the mobile home.

The Wallingfords agreed to repay principal in the amount of $98,016.80, with an interest rate of 7.71% per year.[1] Green Tree Servicing, LLC assumed both the note to the mobile home and the mortgage to the real property, cross-collateralizing the lien and the mortgage, respectively.

On April 1, 2011, the Wallingfords filed a petition for bankruptcy, seeking relief under Chapter 13 of the bankruptcy code. $94,877.11 remained unpaid on the note held by Green Tree at the time of filing. The Wallingfords filed a Debtors' Plan that called for a cramdown on their mobile home; in doing so, they asserted that the home was personal property. Green Tree objected, countering that the mobile home was real property and thus not subject to cramdown.

About five months later, the bankruptcy court held a confirmation hearing. At this time, it became apparent that the Wallingfords never surrendered the title to their mobile home. Despite this, the bankruptcy court sustained Green Tree's objection by reasoning that a common-law fixture analysis compelled a conclusion that the mobile home was real property.

---

[1] The district court and the parties listed the interest rate as 7.1% per annum, but the Truth in Lending Act disclosures indicate an interest rate of 7.71% per year.

The Wallingfords lodged an appeal with the district court, contending that the bankruptcy court erred in concluding that the mobile home was real property. The district court agreed with their contention and concluded that a mobile home must be affixed to a permanent foundation on the land—with the home's title surrendered to the local clerk of court—for it to become real property. It confirmed the Wallingfords' proposed Chapter 13 plan. Green Tree filed a timely notice of appeal.

## II.

When we review an appeal that originates in the bankruptcy courts, we look directly to the bankruptcy court's decision, instead of evaluating the wisdom of the district court's decision. *In re Alfes*, 709 F.3d 631, 636 (6th Cir. 2013). But this does not prevent us from paying heed to the district court's reasoning; rather, we are simply unobligated to defer to it. *See In re Quality Stores, Inc.*, 693 F.3d 605, 609 (6th Cir. 2012). Factual findings made by the bankruptcy court are reviewed for clear error, while conclusions of law are reviewed *de novo*. *In re Wicker*, 702 F.3d 874 (6th Cir. 2012).

A debtor seeking Chapter 13 relief has the option of modifying, or "cramming down," the secured interest of the creditor to receive court approval for a reorganization plan. *See* 11 U.S.C. § 1325(a)(5). While the bankruptcy court may "modify the rights of holders of secured claims," it may not modify "a claim secured only by a security interest in real property that is the debtor's principal residence." *Id.* § 1322(b)(2). Despite the bankruptcy code's voluminous list of definitions, there is no definition for the term "real property." *See generally* § 101. We are, therefore, compelled to look

to state law for the term's meaning. *See Giant Eagle, Inc. v. Phar-Mor, Inc.*, 528 F.3d 455, 459 (6th Cir. 2008).

This leaves us with the quandary of *which* state law to examine. While Green Tree asks us to adopt the reasoning of prior bankruptcy appellate panel decisions that discussed the Ohio common-law fixture analysis, our consideration of this appeal must begin with the question of whether *In re Reinhardt*, 563 F.3d 558 (6th Cir. 2009), controls the outcome of this case as circuit precedent. We conclude that it does.

Much like the matter before us, *Reinhardt* dealt with the anti-modification provision of § 1322(b)(2). *Id.* at 561. The case also involved a parcel of real property in Ohio, on which a mobile home had stood—the lender had a security interest in both the real property and the mobile home. *Id.* at 560. Attempting to cast the security interest in the real property as the dispositive factor, the creditor contended that there was no need to look to state law to determine whether the anti-modification provision should apply. *Id.* at 562.

We declined to adopt this proposition because the creditor's reading of § 1322(b)(2) was an untenable one. *See id.* at 563 (observing that the lender's reading of the statute required the adjustment of its wording, thereby "show[ing] the error of its interpretation"). As a result, we declared that it was proper for a bankruptcy court to look to state law to determine whether the mobile home qualified as real property, as that question remained unanswered by the bankruptcy code. *See id.* But, prior to doing so, we identified the provision of Ohio law that would otherwise determine the outcome of the case if the creditor's argument on appeal was unsuccessful. We looked

to a state law framework that was, and remains, straightforward: according to section 5701.02(B)(2) of the Ohio Revised Code, "a mobile home is generally considered personal property, and only becomes real property if (1) 'the home is affixed to a permanent foundation and is located on land owned by the owner of the home,' and (2) 'the certificate for the mobile home has been inactivated by the clerk of the court of common pleas that issued it.'" *Id.* at 561-62 (quoting Ohio Rev. Code § 5701.02(B)(2)) (internal modifications omitted). We ultimately affirmed the decision of the bankruptcy court by relying upon this statute.

As the district court noted in the present matter, Green Tree's attempt to avoid modification is a futile one if section 5701.02(B)(2) is dispositive—the Wallingfords never had the title to their mobile home "inactivated" by surrendering it. Recognizing this dead end, Green Tree instead seeks to rationalize the validity of the bankruptcy court's decision by relying upon two earlier decisions from this circuit's bankruptcy appellate panels, *In re Cluxton*, 327 B.R. 612, 614 (6th Cir. BAP 2005), and *In re Davis*, 386 B.R. 182 (6th Cir. BAP 2008), to suggest that section 5701.02(B)(2) is not the only means by which the real property determination can be made under Ohio law.

But our decision in *Reinhardt* is the law of this circuit, and we are obligated to follow it. *See United States v. Humphrey*, 287 F.3d 422, 452 (6th Cir. 2002) ("It is axiomatic that a court of appeals must follow the precedent of prior panels within its own circuit."). While the *Reinhardt* court touched upon *Cluxton* and *Davis*, it did not entertain the possibility that the common-law fixture analysis, standing alone, could determine whether a mobile home was real property for purposes of the anti-modification provision. This suggests that the *Reinhardt* court impliedly

rejected the dichotomous (or more accurately, open-ended) approach that Green Tree now asks us to adopt—one where the common-law fixture analysis can substitute for the conjunctive, two-part test provided by section 5701.02(B)(2).

Green Tree attempts to diminish the relevance of *Reinhardt* by noting that the state-law real property determination was uncontested in that case—both parties stipulated that section 5701.02(B)(2) should govern if the lender's arguments ultimately proved to be unavailing. *See Reinhardt*, 563 F.3d at 562 ("Vanderbilt does not contest the bankruptcy court's finding that the mobile home is personal property under Ohio law."). That is not, however, the standard that we use to measure the precedential value of our prior observations of law. While, at times, it may be difficult to discern a holding, *see Metropolitan Hosp. v. U.S. Dep't of Health and Human Servs.*, --- F.3d ----, 2013 WL 1223307, at \*10 (6th Cir. Mar. 27, 2013) (published decision), one exists when our determination of a matter of law is "pivotal to [a] decision." *United States v. Hardin*, 539 F.3d 404, 438 (6th Cir. 2008) (Batchelder, J., concurring in part and dissenting in part) (quoting Black's Law Dictionary, 8th ed. 2004). In *Reinhardt*, our decision to affirm the bankruptcy court ultimately pivoted on the Ohio statute—therefore, our reliance on that law has precedential value.

Finally, we note that Green Tree's characterization of *Reinhardt* as a mere recognition of "how Ohio's tax code classifies a mobile home for tax purposes" is a bit misleading and too narrow in scope. (*See* Appellant's Br. at 18.) Our decision in *Reinhardt* does more than just that—it uses that recognition as a means for determining when and whether a mobile home is protected from cramdown. In relying upon the Ohio tax statute, we did indeed observe that "an Ohio citizen's obligation to pay taxes on his or her unattached mobile home as personal property is completely

unrelated to how a federal bankruptcy court would treat that same mobile home in determining whether to allow a cramdown." *Reinhardt*, 563 F.3d at 564. Context, however, matters—we made that observation only to express that our decision to rely upon that particular provision of state law for bankruptcy purposes maintained the harmony between Ohio's tax code and the federal bankruptcy code. *See id.* ("First, compliance with both the federal bankruptcy statute and the Ohio tax statute is possible . . . ."). Hence, Green Tree's argument in this regard is unavailing.

## III.

To say the least, decisions from the Ohio courts on this issue have not served as models of clarity. Some Ohio courts have disregarded—or at the very least, diminished—the importance of the surrender requirement and have primarily relied upon a traditional common-law fixture analysis to determine whether a mobile home is real property. *See, e.g.*, *Rickett v. Ohio Real Estate Appraiser Bd.*, No. 07AP-667, 2008 WL 2553043, at *7 (Ohio Ct. App. June 26, 2008). But the origin of this trend appears to be our own bankruptcy courts, particularly the *Cluxton* court. The *Cluxton* court, in turn, relied on *Snyder v. Hawkins*, No. 03-CA-007, 2004 WL 48882 (Ohio Ct. App. Jan. 9, 2004), to come to the conclusion that "Ohio courts have held that a failure to precisely follow the statute [by failing to surrender the title] . . . does not negate the mobile home becoming part of the real property by operation of law." *In re Cluxton*, 327 B.R. at 615; *see also Rickett*, 2008 WL 2553043, at *7 (citing *In re Cluxton*, 327 B.R. at 615).

*Snyder*, however, has no such holding. The case was decided on *res judicata* grounds, with the propriety of foreclosure proceedings already stipulated to by the parties, thus being unchallengeable through a collateral attack. *Snyder*, 2004 WL 48882, at *5. Indeed, the *Snyder*

court cited an opinion by the Ohio Attorney General which recognized the surrender of title as the final step to complete the transition from personalty to realty—if there is no surrender, then the transformation to realty remains incomplete because the property has not crossed the requisite threshold of affixation. *See id.*; *see also* 1993 Ohio Op. Att'y Gen. No. 2-385 ("[T]he owner must surrender the certificate of title to a manufactured home any time that a county auditor determines that the home has been altered sufficiently to classify it as real property.").

Other Ohio case law reinforces the importance of requiring the surrender of title prior to the recognition of a mobile home as real property. In *Benner v. Hammond*, 673 N.E.2d 205 (Ohio Ct. App. 1996), the Ohio Court of Appeals wrestled with the question of how to discern whether a trailer is mobile or permanently affixed for purposes of a restrictive covenant. The deciding factor was the owner's certification that a home will not be moved—i.e., surrender of title. *See id.* at 209. This conclusion was compelled by the fact that "almost any home is moveable, and therefore it is unreasonable to harp on the possibility that a manufactured home may be moved." *Id.* Given these considerations, it seems imprudent to endorse an interpretation of Ohio law that allows the common-law fixture analysis, standing alone, to govern the outcome of a case involving the cramdown of a mobile home. There must be more—and the *Reinhardt* framework provides it.

IV.

Seeing no reason to deviate from our decision in *Reinhardt*, we conclude that the Wallingfords' failure to surrender the title to their mobile home is dispositive in this matter: the home is personal property under Ohio law and thus subject to cramdown. Accordingly, the decision of the district court is **AFFIRMED.**