JOHN P. VAN NESS AND WILLIAM JONES, PLAINTIFFS IN ERROR;, *vs.* THE BANK OF THE UNITED STATES, DEFENDANT IN ERROR.

The proceedings of the Courts of the state of Maryland, and the laws of that state prior to the passing of laws by Congress providing for the government of the District of Columbia, were in full force and operation in that part of the district ceded by the state of Maryland, until Congress had legislated for the government of the District of Columbia; and the decree of the Court of Chancery of Maryland, affecting property in the District of Columbia, in a cause entertained in that Court, operated in the district until Congress took upon itself the government of the district.

The state of Maryland, and the United States, both intended that the suits pending in the Courts of Maryland, should be proceeded in until the rights of the parties should be definitively decided; and that the judgments and decrees there made, should be as valid and conclusive as if the sovereignty had not been transferred.

Congress, by the 13th section of the Act of February 27, 1801, placed judgments and decrees thereafter to be obtained in the state Courts of the state of which the District of Columbia had formed a part, on the same footing with judgments and decrees rendered before.

If a guardian appointed by the Court of the state of Maryland, in a cause instituted after Congress had legislated for the District of Columbia, had been ordered, by a decree of the Court, to make a deed of lands within the district, and had died, or had refused to make the conveyance as ordered, the Court of the district would, on application, have been bound to appoint another person to execute the deed; and would not have been authorized to open again and re-examine the questions which had been decided in the Maryland Court.

A deed was executed and acknowledged " W. M. Duncanson, guardian for Marcia Burnes; and acknowledged by the guardian "to be his act and deed as guardian aforesaid, and thereby the act and deed of the said Marcia." This is a good execution and acknowledgment.

The Acts of the Assembly of Maryland, prescribing the mode in which deeds should be acknowledged for the conveyance of real property, were adopted by Congress In the act assuming jurisdiction in the District of Columbia, together with the other laws of Maryland then in force. The Acts of the Assembly of Maryland relating to the acknowledgment of deeds, do not require that justices of the peace, or other officers who have authority to take acknowledgments, shall describe in their certificates their official character. Whenever it is established by proof that the acknowledgment was made before persons authorized to take it, it must be presumed to have been taken by them in their official capacity.

The soundest reasons of justice and policy seem to demand that every reasonable intendment should be made to support the titles of bona fide purchasers of real property.

In the declaration in ejectment, various demises were laid, and the verdict of this jury, and the judgment of the Circuit Court, were entered on one of the demises only; and it was contended that the Court ought not to have entered a judgment on the issue found for the plaintiff, but should have awarded a venire de novo.; and that this irregularity might be taken advantage of upon a writ of error. Held : that if this objection had been made in the Circuit Court on a motion in arrest of judgment, the plaintiff would have been permitted to strike out all the demises for the declaration but that on which the verdict was given. The omission to strike out these demises was only, therefore, an omission of form; and the Act of Congress of 1789, ch. 20, sec. 32, expressly provides that no judgment shall be reversed for any defect or want of form; but that the Courts of the United States shall proceed and give judgment, according as the right of the cause and matter in law shall appear to them, without regarding any imperfections, defects, or want of form in the judgment or course of proceeding, except that specially demurred to.

IN error to the Circuit Court of the United States for the District of Columbia, sitting for the county of Washington.

This case came before the Court from the District of Columbia,

B 2                                      3

and was argued by Coxe for the plaintiffs in error, and by Mr. Key for the defendants.

The case is fully stated in the following opinion of the Court, delivered by Mr. Chief Justice TANEY.

This case comes before the Court upon a writ of error, directed to the judges of the Circuit Court for the District of Columbia, sitting for the county of Washington.

It is an action of ejectment brought by the Bank of the United States, to recover sundry lots of ground in the city of Washington. The declaration contains four demises, purporting to have been made for the same premises by different lessors. The jury found for the plaintiff upon one of the demises, but said nothing of the other three; and the judgment of the Court is entered, in like manner, upon the particular demise on which the jury found for the plaintiff; and without taking any notice of the others.

At the trial in the Circuit Court, it was admitted that David Burnes was seized in fee of the premises in controversy in his life time, and that he died seized thereof, intestate, leaving Marcia Burnes his only child and heiress at law. The plaintiff in the Court below, then offered in evidence the exemplification of a record from the Court of Chancery of Maryland, duly certified, by which it appeared that a certain Isaac Pollock, on the 17th of May, 1800, filed his bill in the said Court, against Marcia Burnes, then an infant, in order to obtain the conveyance of a large number of lots, in the city of Washington, among which are the lots now in controversy; and claiming the same under a contract made with David Burnes in his life time, which had not been carried into execution by proper conveyances at the time of his death. It further appeared, by the said record from the Court of Chancery, that after various proceedings in the case, the chancellor, on the 1st of November, 1800, decreed, that upon the complainant's securing the purchase money to the satisfaction of the chancellor, the infant defendant, Marcia Burnes, should, by William Mayne Duncanson, who had been appointed her guardian ad litem, convey the said lots to Pollock in fee. Afterwards, further proceedings having been had, the Court, on the 26th of October, 1801, passed another decree, approving the security which Pollock offered, (which was security on other real property,) and directing that, upon the complainant's executing mortgages for the said real property to the said Marcia, to secure the payment of the purchase money, she should make the conveyance by her guardian, as directed by the former decree. It is unnecessary to state more in detail the proceedings in the Maryland Court, because it is admitted that they were fully warranted by the laws of that state. The plaintiff in the Circuit Court offered also in evidence, together with this record, the deeds of mortgage executed by the said Pollock, pursuant to the aforesaid decree; and also a deed of conveyance for the said lots from Marcia Burnes to Pollock, executed by William Mayne Duncanson as her guardian. This deed is dated

January 12, 1802, after Congress had assumed the government of this district. The defendant in the Circuit Court objected to the admissibility and competency of all the evidence above stated; but the objection was overruled by the Court, and this forms the first exception.

In the further progress of the trial in the Circuit Court, various other deeds were offered in evidence on the part of the plaintiff, in order to show a title derived from Isaac Pollock; and among the deeds thus offered, was one from Walter Smith to Benjamin Stoddart, dated March 5, 1807, acknowledged before Richard Parrott and Thomas Corcoran. This acknowledgment was dated " *District of Columbia, Washington County, to wit;*" but it was not stated in the acknowledgment, nor did it appear by that instrument, that Parrott and Corcoran were justices of the peace for Washington county. In point of fact, however, they were such justices, and it is so admitted in the exception. The defendant objected to the admissibility of this deed; and this forms the substance of the second exception; for although other papers are mentioned as objected to at the time, the only point raised here is upon the acknowledgment of this deed.

Upon the first exception the plaintiffs in error insist that the deed of conveyance from Marcia Burnes to Pollock, of the 12th of January, 1802, executed by her guardian as above mentioned, pursuant to the decree of the Maryland Court of Chancery, conveyed no title ; that the sovereignty of Maryland over Washington county, in this district, having terminated on the 27th of February, 1801, when Congress assumed the jurisdiction, the decree of the state Court could not be executed without filing an exemplification of the record, according to the 13th section of the Act of Congress; which provided for the government of the territory; and obtaining an order for the execution of the decree, from the Chancery Court of this district.

This objection cannot be sustained. The Act of Assembly of Maryland, of 1791, ch. 45, which ceded the territory to the United States, provided, "That the jurisdiction of the laws of the state over the persons and property of individuals residing within the limits of the cession, should not cease or determine until Congress should by law provide for the government thereof under their jurisdiction." The United States accepted the cession made by this law of the state ; and the conditions above mentioned, therefore, formed a part of the contract between the parties; and consequently the laws of Maryland, and the jurisdiction of its Courts, continued in full force, until Congress took upon itself the government of the district: and as it was uncertain at what time the United States would assume the jurisdiction, it must have been foreseen, that whenever that event should happen many suits would be found pending and undetermined in the state Courts. It was certainly not the intention of the parties to the cession, that such suits should abate, and

that individuals who had rightfully instituted proceedings in the tribunals of the state, and incurred the expense and delays which are unavoidable in such cases, should immediately upon the assumption of jurisdiction by the United States, be compelled to abandon the state Courts, and to begin anew in the Courts of the district. There could be no reason of policy or justice for adopting such a measure: and without stopping to inquire what, upon general principles of law, would be the effect of a cession of territory, upon suits then pending in the Courts of the ceding sovereignty, it is evident that in this case, the state and the United States both intended that the suits then pending in the Maryland tribunals should be proceeded in until the rights of the parties should be finally decided; and that the judgments and decrees there made, should be as valid and conclusive as if the sovereignty had not been transferred. We have already stated the provisions of the Act of Assembly of Maryland; and Congress in assuming the jurisdiction recognised the rights of the state Courts, and by the 13th section of the Act of February 27th, 1801, placed judgments and decrees thereafter to be obtained in the state Courts, in suits then pending, upon the same footing with judgments and decrees rendered before. In either case, upon filing an exemplification of the proceedings had in the state Courts, it authorized process of execution from the District Court of the United States, in the same manner as if the judgment or decree had been there rendered. It makes no exception in regard to real property situated in the district; and the rights to such property then in litigation are placed on the same ground with rights to personal property and personal rights, and like them, are left to the final adjudication of the Courts of the states. And although upon a strict and technical construction of the 13th section of the Act of Congress before referred to, it may be doubted whether this decree falls within that description of judgments and decrees for which provision is there made; yet when the conditions upon which the cession was made by Maryland, and accepted by Congress, are considered, it is very clear, that if the guardian appointed by the state Court had died or had refused to make the conveyance as ordered, the Court of this district would, upon the application of Pollock have been bound to appoint another person to execute the deed, and would not have been authorized to open again and re-examine the questions which had been decided in the Maryland Court. And in such a case the conveyance to Pollock, by the infant heiress of Burnes, would have owed its validity altogether to the decree of the state tribunal; and the title of the garantee would have received no additional strength from the order of the District Court. We can, therefore, see no necessity for an order from that Court, when the guardian appointed was willing to execute it, and did execute it, in obedience to the decree of the Maryland Court.

An objection has also been taken to the manner in which this deed is signed and acknowledged. It is signed, "W. M. Duncanson, guardian for Marcia Burnes;" and he acknowledges it "to be

his act and deed, as guardian as aforesaid, and thereby the act and deed of the said Marcia."

It is argued that it should have been signed "Marcia Burnes, by her guardian W. M. Duncanson," and in like manner acknowledged "as her act and deed." This is a case, where no question arises as to the manner of executing an authority given by private persons, as to which the case of the lessee of Clark *vs.* Courtney, 5 Peters' R. 319. 349, 350, may justly apply. But is the case where an authority is to be exercised under the decree of a Court of Chancery, and therefore, where a liberal construction may and ought to prevail. These two forms of signature and acknowledgment mean precisely the same thing; and as this deed substantially conforms in the manner of its execution to the directions contained in the decree, we consider it to be valid and effectual to convey the property therein mentioned.

Upon the second exception, the plaintiff in error contends, that the acknowledgment of the deed from Walter Smith to Benjamin Stoddart is defective, and the deed inoperative, because it does not appear in the certificate of acknowledgment endorsed upon the deed that the persons before whom it was made were at that time justices of the peace for Washington county; and he insists that this omission cannot be supplied by parol.

This question depends upon the construction of the Acts of Assembly of Maryland which prescribe the mode in which deeds shall be acknowledged for the conveyance of real property; those Acts of Assembly having been adopted by Congress in the Act assuming jurisdiction, together with the other laws of Maryland then in force. We perceive nothing in the Maryland Acts of Assembly which requires justices of the peace or other officers to describe in their certificates their official characters. It is no doubt usual and proper to do so, because the statement in the certificate is prima facie evidence of the fact, where the instrument has been received and recorded by the proper authority. But such a statement is not made necessary by the Maryland statutes. And whenever it is established by proof that the acknowledgment was made before persons authorized to take it, it must be presumed to have been taken by them in their official capacity; and when their official characters are sufficiently shown by parol evidence, or by the admissions of the parties, we see no reason for requiring more where the Acts of the Legislature have not prescribed it. On the contrary, the soundest principles of justice and policy would seem to demand that every reasonable intendment should be made to support the titles of the bona fide purchasers of real property; and this Court is not disposed to impair their safety, by insisting upon matters of form, unless they were evidently required by the legislative authority.

If the Maryland Courts had given a contrary construction to these Acts of Assembly, we should of course feel it to be our duty to follow their decision. But we do not find the point decided in any of the Maryland reports. In the case of Connelly *vs.* Bowie, 6 Har. &

John. 141, the certificate of acknowledgment did not state that the persons by whom it was taken were justices of the peace, and there was no evidence in the record to prove their official character. The deed was, therefore, clearly inadmissible; and it was so ruled by the Court of Appeals. But it does not follow that the decision would have been the same if parol evidence had been given to prove their official character; and from the language of the Court in that case, it may rather be inferred, that if other evidence had been offered, it would have been deemed admissible to supply the omission in the certificate endorsed on the deed.

The objection made to the verdict and judgment applies altogether to the form of the proceeding, and does not in any degree affect the merits of the controversy. The verdict and the judgment, it appears, are upon one of the demises only; and it is insisted that as the jury did not find all of the issues committed to them by the pleadings, the Circuit Court ought not to have entered a judgment for the plaintiff upon the issue found in his favour; but should have awarded a venire de novo: and that this irregularity in the proceedings may be taken advantage of upon a writ of error. It is not necessary to examine whether this objection could be maintained upon the practice and decisions of the English Courts in relation to the action of ejectment. For the Act of Congress of 1789, ch. 20, sec. 32, expressly provides, among other things, that no judgment shall be reversed for any defect or want of form; but that the Courts shall proceed and give judgment according as the right of the cause and matter in law shall appear to them, without regarding any imperfections, defects, or want of form in the judgment or course of proceeding, except those specially demurred to. Now, the demises laid in a declaration in ejectment are known to be fictitious and mere form; and if the appellant had taken this objection in the Circuit Court, in arrest of judgment, the plaintiff would undoubtedly have been permitted to strike these demises from the declaration, and thus obviate the objection. The omission of the plaintiff to do this was nothing more than an omission of a matter of form; and if, therefore, this proceeding in the Circuit Court should be held to be irregular, it is nothing more than an error of form; and as such, furnishes no ground for the reversal of the judgment.

The judgment of the Circuit Court is therefore affirmed, with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.