In re Matthew B. NOWAK and Cynthia J. Nowak, Debtors.

Thomas McK. Hazlett, Plaintiff,

v.

Chase Home Finance, LLC, Defendant.

Bankruptcy No. 07–53167.
Adversary No. 08–2231.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

Sept. 25, 2009.

---

Thomas McK. Hazlett, Saint Clairsville, OH, for pro se.

Michelle Polly–Murphy, Wilmington, OH, Nathan L. Swehla, Cincinnati, OH, for Chase Home Finance, LLC.

Mortgage Electronic Registration Systems, Inc., Flint, MI, pro se.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

Chapter 7 trustee Thomas McK. Hazlett ("Trustee") seeks to avoid a lien evidenced by a mortgage ("Mortgage") recorded in favor of Chase Home Finance, LLC ("Chase"). The certificate of acknowledgment on the Mortgage identifies the certifying official as a broker, not as a notary public or other public official qualified to certify acknowledgments. As a result, the Trustee contends, the Mortgage is defective under Ohio law and avoidable under 11 U.S.C. § 544(a)(3). For the reasons stated below, the Court concludes that the Mortgage was defective in its execution and grants summary judgment in favor of the Trustee.

### II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. See 28 U.S.C. § 157(b)(2)(K).

### III. Background

Although the parties have not filed stipulations, they also have not disputed the few facts that are material to the Court's decision in this adversary proceeding. On February 18, 2003, Matthew B. Nowak and Cynthia J. Nowak ("Nowaks" or "Debtors") signed the Mortgage, thereby granting Chase Manhattan Mortgage Corporation, the predecessor of Chase, a lien on

the real property located at 67311 Warnock–St. Clairsville Road, St. Clairsville, OH ("Property"). The Mortgage was recorded in the Recorder's Office for Belmont County, Ohio on February 27, 2003. The certificate of acknowledgment on the Mortgage ("Certificate of Acknowledgment") provides:

> State of Ohio
>
> County of **Belmont**
>
> The foregoing instrument was acknowledged before me this 2/18/2003 **by Matthew B. Nowak and Cynthia J. Nowak**
>
> *Jeanne V. Sayre*
>
> (Signature of person taking acknowledgment)
>
> (Title or rank)
>
> (Serial number, if any) **Broker**

The text reproduced above in bold was set forth in legible handwriting; the remaining text was printed in one or more typefaces. Jeanne V. Sayre ("Ms. Sayre") held a notary commission at the time she subscribed her name to the Certificate of Acknowledgment, but was identified therein as a broker, not as a notary public. The Certificate of Acknowledgment does not include Ms. Sayre's notarial seal, nor is her status as a notary public identified anywhere within the Mortgage.

On April 27, 2007, the Debtors filed a joint voluntary Chapter 7 petition, thereby giving rise to the Trustee's capacity as a hypothetical bona fide purchaser under § 544(a)(3) of the Bankruptcy Code.[1] The Trustee seeks to avoid the lien evidenced by the Mortgage under § 544(a)(3) and preserve it for the benefit of the Debtors' jointly administered but separate bankruptcy estates under § 551.[2] Chase has filed a motion for summary judgment ("Chase Motion") (Doc. 15), as has the Trustee ("Trustee Motion") (Doc. 16).

## IV. Arguments of the Parties

The Trustee states that "[t]he issue in this case is a simple one, whether or not the [M]ortgage is properly acknowledged pursuant to Section 5301.01." Trustee Motion at 3. According to the Trustee, the Mortgage "was not properly acknowledged as required by Ohio law[,]" *Id.* at 1, because the Certificate of Acknowledgment "contains absolutely no indication that Jeanne Sayre held a notary commission or, even more importantly, that she was signing the document in her capacity as notary rather than in her capacity as broker, which the document specifically indicates." Plaintiff's Response to Defendant's Motion for Summary Judgment at 1 (Doc. 18). The broker/notary public distinction matters, the Trustee contends, because the applicable statutory short form of acknowledgment set forth in Ohio Revised Code § 147.55[3] includes a space for the certify-

---

1. Section 544(a)(3) provides:

 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

 . . . .

 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

 11 U.S.C. § 544(a)(3).

2. "Any transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

3. Ohio Revised Code § 147.55(A) provides:

 The forms of acknowledgment set forth in this section may be used and are sufficient for their respective purposes under any section of the Revised Code. The forms shall be known as "statutory short forms of ac-

ing official to identify his or her title or rank. Based on this form, the Trustee argues that an acknowledgment taken by a notary public is effective only if the notary public identifies herself as such. Trustee Motion at 3. According to the Trustee, the Certificate of Acknowledgment is defective for the additional reason that Ohio Revised Code § 5301.01(A)[4] requires acknowledgments to be taken before certain specified categories of public officials, including notaries public, but not before private individuals such as brokers. *Id.* at 3–4.

Chase agrees that the issue in this adversary proceeding is acknowledgment, but contends that the acknowledgment was effective because § 5301.01(A) "only requires that the official certifying the acknowledgement subscribe his or her name to the certificate [and] says nothing about disclosing the official's capacity or affixing his or her seal." Chase Motion at 6. According to Chase, "the additional information that the notary was also the 'Broker' does not negate the fact [that] Jeanne V.

Sayre is a notary commissioned by the State of Ohio and authorized by law to certify the acknowledgment." *Id.* Chase also relies on the statement in § 5301.071(B) of the Ohio Revised Code that mortgages are not defective merely because the notary public failed to affix his or her seal to the certificate of acknowledgment.[5] With respect to the Trustee's reliance on § 147.55 and its statutory short forms of acknowledgment, Chase notes that the section expressly "states that it does not preclude the use of other forms" and also argues that, "[a]lthough [Ohio Revised Code] § 147.55 offers a place in the acknowledgement for [disclosing the title of the person taking the acknowledgment], it does not require such be provided." Chase Home Finance, LLC's Opposition to the Trustee's Motion for Summary Judgment (Doc. 17) at 2.

## V. Legal Analysis

### A. Summary Judgment is Appropriate.

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed.

---

knowledgment" and may be referred to by that name. The authorization of the forms in this section does not preclude the use of other forms.

(A) "For an individual acting in his own right:

State of _____

County of _____

The foregoing instrument was acknowledged before me this (date) by (name of person acknowledged.)

(Signature of person taking acknowledgment) (Title or rank) (Serial number, if any)"

Ohio Rev.Code Ann. § 147.55(A) (West 2009).

4. Section 5301.01(A) states:

A deed, mortgage, land contract ... or lease of any interest in real property and a memorandum of trust ... shall be signed by the grantor, mortgagor, vendor or lessor.... The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor ... before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and

subscribe the official's name to the certificate of the acknowledgement.

Ohio Rev.Code Ann. § 5301.01(A). The Ohio Revised Code sometimes uses the spelling *acknowledgment* and other times the variant spelling *acknowledgement*. Both are correct, although *acknowledgment* is more commonly used in American English. In this opinion, the Court will use the spelling used in the original when quoting a source, but otherwise will use *acknowledgment*.

5. Section 5301.071(B) states:

No instrument conveying real estate, or any interest therein, and of record in the office of the county recorder of the county within this state in which such real estate is situated shall be deemed defective nor shall the validity of such conveyance be affected because:

....

(B) The officer taking the acknowledgment of such instrument having an official seal did not affix such seal to the certificate of acknowledgment.

Ohio Rev.Code Ann. § 5301.071(B).

R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir.2007). " '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr.S.D.Ohio 2003). The filing of cross motions does not alter the standards governing the determination of summary judgment motions. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). But " 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.' " *Schafer v. Rapp (In*

*re Rapp)*, 375 B.R. 421, 428 (Bankr. S.D.Ohio 2007) (quoting *Greer v. United States*, 207 F.3d 322, 326 (6th Cir.2000)).

Here, the parties agree, and the Court finds, that no genuine issue of material fact exists. Summary judgment, therefore, is appropriate.

### B. The Trustee May Avoid the Mortgage Under § 544(a)(3).

#### 1. Application of Ohio Law

 Applicable state law—here, the law of Ohio—governs the validity and priority of mortgages against bankruptcy trustees asserting their rights as hypothetical bona fide purchasers under § 544(a)(3). *See Reinhardt v. Vanderbilt Mortgage & Fin., Inc. (In re Reinhardt)*, 563 F.3d 558, 563 (6th Cir.2009) ("Where the [Bankruptcy] Code does not specifically address an issue that arises in bankruptcy, the bankruptcy court looks to state law, to the extent that it does not conflict with the [B]ankruptcy [C]ode[.]") (internal quotation marks omitted) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Under Ohio law, only mortgages that were properly recorded have priority over the interests of bona fide purchasers. *See* Ohio Rev. Code Ann. § 5301.25(A).[6] There is no dispute that the Mortgage was recorded. To be properly recorded, however, the Mortgage must be an "instrument[ ] of writing *properly executed* for the conveyance or encumbrance of lands, tenements, or hereditaments...." Ohio Rev.Code Ann.

---

**6.** Section 5301.25(A) of the Ohio Revised Code states:

All deeds, land contracts ... and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments ... shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

Ohio Rev.Code Ann. § 5301.25(A).

§ 5301.25 (emphasis added). *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 81 (6th Cir. BAP 1999) ("By providing that only properly executed instruments may be recorded and that an unrecorded instrument is fraudulent as to any subsequent bona fide purchaser taking without notice, the statute protects subsequent purchasers from improperly executed instruments and properly executed but unrecorded instruments alike."), *aff'd*, 250 F.3d 1020 (6th Cir.2001). Thus, "[o]nly properly executed mortgages take priority over a bona fide purchaser under Ohio law." *Kovacs v. First Union Home Equity Bank (In re Huffman)*, 408 F.3d 290, 293 (6th Cir.2005) (citing Ohio Rev.Code Ann. § 5301.25).

To determine whether a mortgage governed by Ohio law is properly executed, the Court looks to Ohio Revised Code § 5301.01(A). *See Monnie v. Field (In re Bross)*, 2006 WL 2381542 at *3 (S.D.Ohio Aug.16, 2006) ("Ohio Rev.Code § 5301.01(A) sets forth the requirements of a properly executed mortgage[.]"). Section 5301.01(A) imposes four requirements, two on the mortgagor and two on the presiding public official: the mortgagor must sign the mortgage and acknowledge the signing before the official, and the official must certify the acknowledgment and subscribe his or her name to the certificate. *See Drown v. Countrywide Home Loans, Inc. (In re Peed)*, 403 B.R. 525, 531 (Bankr.S.D.Ohio 2009); *Drown v. GreenPoint Mortgage Funding, Inc. (In re Leahy)*, 376 B.R. 826, 832 (Bankr.S.D.Ohio 2007). The Trustee does not dispute that the Nowaks signed the Mortgage or that Ms. Sayre certified and subscribed her name to the Certificate of Acknowledgment. Rather, the parties frame the disputed issue as one of proper or improper *acknowledgment.* The Court, therefore, must decide whether the acknowledgment of the Nowaks' signatures was proper given that Ms. Sayre identified herself only as a broker.

In applying Ohio law to the acknowledgment issue, the Court begins by noting "the restricted relationship a federal court has in applying a state statute when that statute has been the subject of interpretation and application by the state's highest court." *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 313 B.R. 732, 735–36 (Bankr.S.D.Ohio 2004). The state statute "must be given the meaning and effect attributed to it by the highest court of the state, as if the state court's decision were literally incorporated into the enactment, whatever the federal tribunal's opinion as to the correctness of the state court's views." *Burns Mortgage Co. v. Fried*, 292 U.S. 487, 494, 54 S.Ct. 813, 78 L.Ed. 1380 (1934). *See also Johnson v. Fankell*, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.").

The Ohio Supreme Court has not issued an opinion applying the statutes on which the parties here rely to a fact pattern on all fours with this adversary proceeding—where the certificate of acknowledgment omits the official title of the person before whom the acknowledgment is made and instead includes a title that would not qualify the public official to take the acknowledgment. Accordingly, the Court's role is to "ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir.1999). *See also In re Kimble*, 344 B.R. 546, 552 (Bankr.S.D.Ohio 2006) ("[T]he Court must make the best prediction, even in the absence of direct state

precedent, of what the [state] Supreme Court would do if confronted with [the] question." (internal quotation marks omitted)). In making this prediction, " 'the Court may rely upon analogous cases and *relevant dicta* in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of the State Supreme Court direction, and persuasive opinions from other jurisdictions, including the 'majority rule.' " *Kimble,* 344 B.R. at 552 (quoting *Owensby v. City of Cincinnati,* 385 F.Supp.2d 626, 631 (S.D.Ohio 2004) (alterations in original)).

■■■■ While engaged in this predictive process, "[t]he Court must 'employ the appropriate [state] methodology to decide this issue the way that [it] believe[s] the Supreme Court of [the state] would decide it.' " *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 197 (5th Cir.2003)). The method of statutory interpretation the Court must follow here has been well-established in a long line of decisions by the Ohio Supreme Court. "In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute." *Carnes v. Kemp,* 104 Ohio St.3d 629, 821 N.E.2d 180, 183 (2004). "In order to determine that intent, a court must first look at the words of the statute itself." *Id.* Courts do not have the authority to engage in an interpretation of a statute that would "rewrite the statute beyond what its literal words will support" or that would add words to the statute. *State ex rel. Fenley v. Ohio Historical Soc'y,* 64 Ohio St.3d 509, 597 N.E.2d 120, 122–23 (1992). *See also, e.g., Portage County Bd. of Comm'rs v. City of Akron,* 109 Ohio St.3d 106, 846 N.E.2d 478, 489 (2006) ("An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language, and a court cannot simply ignore or add words.");

*Cline v. Ohio Bureau of Motor Vehicles,* 61 Ohio St.3d 93, 573 N.E.2d 77, 80 (1991) ("In determining intent, it is the duty of the court to give effect to the words used, not to delete words used or insert words not used."); *Iddings v. Jefferson County Sch. Dist. Bd. of Educ.,* 155 Ohio St. 287, 98 N.E.2d 827, 829 (1951) ("To construe or interpret what is already plain is not interpretation but legislation, which is not the function of the courts.").

## 2. Ohio's Uniform Recognition of Acknowledgments Act

The Trustee relies in part on the statutory short form of acknowledgment set forth in § 147.55(A), which includes a space for the certifying official to identify a title or rank. Section 147.55, however, provides that the short forms "may be used and are sufficient" but does not mandate the use of those forms. Ohio Rev. Code Ann. § 147.55. To the contrary, § 147.55 expressly states that "[t]he authorization of the forms in this section does not preclude the use of other forms." *Id.* Nor does § 147.55 provide that an acknowledgment is defective merely because the notary public omits his or her official title. Because this Court does not have the authority to interpret an Ohio statute so as to add words to it, the Court declines to find within § 147.55 a rule that an acknowledgment is defective if a notary public fails to identify herself as such. *Cf. Helbling v. Zabor (In re Zabor),* 2009 WL 2256911 at *5 (Bankr.N.D.Ohio July 22, 2009) (holding—in an adversary proceeding in which the issue was whether the certificate of acknowledgment must include the date of signing—that the date was not required and that the statutory short form of acknowledgment was not dispositive because "[w]hile the date is indeed a part of the short form of acknowledgment authorized under Ohio Rev.Code

§ 147.55, that section does not preclude the use of other forms").

It is true that courts have interpreted the statutory short forms as contemplating that the *mortgagor* must be identified in the certificate of acknowledgment. *See, e.g., Geygan v. World Sav. Bank, FSB (In re Nolan),* 383 B.R. at 391, 396 (6th Cir. BAP 2008). This view, however, finds support in controlling Ohio case law and in the entire statutory framework of Ohio's Uniform Recognition of Acknowledgments Act ("Acknowledgments Act"), Ohio Revised Code §§ 147.51 to 147.58, not merely in § 147.55 alone. In particular, § 147.53 requires the "person taking an acknowledgment" to certify that "[t]he person acknowledging appeared before him...." Ohio Rev.Code Ann. § 147.53(A). Furthermore, in *Smith's Lessee v. Hunt,* 13 Ohio 260, 269 (1844), the Ohio Supreme Court held that a mortgage was defective where the certificate of acknowledgment did not identify the mortgagor. But the parties have not cited—and the Court's independent research has not revealed—a decision of the Ohio Supreme Court holding that § 147.55 renders an acknowledgment defective merely because the certification thereof omits the notary public's official title.

The Trustee does not rely on any provision of the Acknowledgments Act other than § 147.55. The Acknowledgments Act, however, merits further review to ensure that it does not render defective an acknowledgment that omits the notary public's title. The Acknowledgments Act, which became effective on January 1, 1974, governs "notarial acts" such as "the administration of oaths and affirmations, taking proof of execution and acknowledgment of instruments, and attesting documents." Ohio Rev.Code Ann. § 147.51. Thus, the Acknowledgments Act applies to a wide range of activities beyond the certi-

fication of acknowledgments on instruments affecting real estate. Under § 147.52(A), the "signature, rank, or title and serial number, if any, of the person [authorized to perform notarial acts] are sufficient proof of the authority of a holder of that rank or title to perform the act" and "[f]urther proof of [the] authority is not required." Ohio Rev.Code Ann. § 147.52(A). The provision, however, speaks in terms of evidentiary sufficiency, not in terms of a mandate. In other words, it does not *require* anything, let alone that the official status of the certifying officer be identified. Thus, in the context of an affidavit of an arresting police officer, a lower Ohio appeals court applying § 147.52 permitted the official capacity of the Deputy Clerk who administered the officer's oath to be proven by extrinsic evidence. *See Hawkins v. Dollison,* 56 Ohio App.2d 183, 381 N.E.2d 1326, 1329 (1978) ("[Because the Deputy Clerk's] complete title is lacking in that the court where he is a Deputy Clerk is not identified and the place of administering the oath is not set forth ... the affidavit on its face is defective and does not constitute prima facie evidence that the person administering the oath was authorized to do so. [But] the ... statute is liberally construed in the interest of public safety.... If appellee is able to prove by other evidence that a properly qualified person administered the oath to the arresting officer, the affidavit is sufficient even though incomplete on its face."). The Court, therefore, does not find within § 147.52 anything that would render the acknowledgment of the Nowaks' signatures defective merely because Ms. Sayre omitted her official title and identified herself as a broker in the Certificate of Acknowledgment.

The uniform acknowledgment acts of certain states include express provisions requiring certifying officials to identify

their titles. *See, e.g.*, Ark.Code Ann. § 16–47–208 (West 2009) ("The certificate of the acknowledging officer shall be completed by his signature, his official seal if he has one, the title of his office, and if he is a notary public, the date his commission expires."); Conn. Gen.Stat. Ann. § 1–35 (West 2009) (same); Kan. Stat. Ann. § 53–508(a) (2008) ("The certificate must include . . . the title of the office of the notarial officer . . . .").[7] The Court is unaware of case law from these jurisdictions addressing the issue of whether such statutory provisions would make a certificate of acknowledgment invalid if the official's title is omitted, and the Court ventures no opinion of what the result would be if Ohio were to adopt one of these other uniform laws. But the Court believes that the Ohio legislature also knows how to mandate such a requirement if it chooses to do so. *Cf. Steven Operating, Inc. v. Home State Sav.*, 105 F.R.D. 7, 9 (S.D.Ohio 1984) ("In this Court's opinion, [the statute] does not create a privilege . . . in view of the fact that the Ohio General Assembly knows very well how to create a privilege and failed to do so . . . ."); *Drown v. ESB (In re Farley)*, 387 B.R. 751, 757 (Bankr. S.D.Ohio 2008) ("[T]he Ohio legislature knows how to require the use of a registered name on a security document when that is what it intends."). Furthermore, because the Ohio legislature has not chosen to include in the Acknowledgments Act an express requirement that the notary public identify his or her title, the Court is not at liberty to read such a requirement into the statute. *Cf. Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 857 N.E.2d

573, 581 (2006) ("The statute does not require informed consent, and we will not read such a requirement into the statute. Instead, the Theobalds should direct this argument to the General Assembly."); *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 800 N.E.2d 7, 11 (2003) ("[The] statute does not on its face require a hearing, and it is not appropriate to read an implicit requirement into the statute."). Rather, imposing the requirement that a notary public identify his or her title must be left to the legislative process or to the issuance of a controlling decision by the Ohio Supreme Court interpreting the currently-enacted Acknowledgments Act as imposing such a requirement. In light of the lack of Ohio precedent on the issue and the method of statutory interpretation the Court is bound to employ, the Court declines—at least based on § 147.55 or any other provision of the Acknowledgments Act—to find that the Mortgage was defectively executed.

### 3. Ohio Law Governing the Acknowledgment of Signatures on Instruments Affecting Real Estate

The status of Ohio law as it relates to acknowledgments in the real property context is another matter, and the Court does find a basis in that law for concluding that the Mortgage was defectively executed. The Court will explain why below, but will first address Chase's reliance on the provision of Ohio law under which Ms. Sayre's failure to affix her notarial seal did not render the Mortgage defective, namely Ohio Revised Code § 5301.071(B). For several reasons, this provision does not

---

7. These state statutes are based on uniform laws, such as the Uniform Acknowledgment Act of 1939 (Arkansas and Connecticut) and the Uniform Law on Notarial Acts of 1982 (Kansas), that require the title of the notary public to be included in the certificate. Ohio law, however, is based on the Uniform Recog-

nition of Acknowledgments Act of 1969, which does not contain such a requirement. *Cf. Zabor*, 2009 WL 2256911 at *4 (distinguishing Kansas law, which requires that a notarial certificate be dated, from Ohio law, which does not).

determine the outcome here. First, the seal includes components other than those indicating notarial status. In addition to containing the words *notary public, notarial seal* or words to that effect, a seal must be designed to either stamp ink onto or emboss a document and must include the State coat of arms and the words "State of Ohio." Ohio Rev.Code Ann. § 147.04. Thus, the omission of the seal is not equivalent to the omission of the notary public's title. Second, unlike § 5301.071(B)'s express statement that the omission of the notarial seal does not render an instrument defective, there is no provision in the Ohio Revised Code expressly stating the same thing with respect to the omission of the notary public's official title. Third, the enactment of § 5301.071(B) in 1959 "followed the long-standing position espoused by the Ohio courts that the omission of the notary's seal does not compromise the validity of a document otherwise properly acknowledged and notarized." *Stubbins v. Chase Home Fin. LLC (In re Robinson),* 403 B.R. 497, 504 (Bankr.S.D.Ohio 2008) (citing *Fund Comm'rs of Muskingum County v. Glass,* 17 Ohio 542 (1848)).

By contrast, Ohio jurisprudence regarding the omission of the certifying officer's official title is distinctly contrary to the case law regarding the omission of the seal. The Ohio Supreme Court has long held that an acknowledgment is defective if the certifying officer fails to identify his or her official title, even where, as here, the governing statutory provision does not explicitly require such identification.[8] The earliest opinion deciding this issue under

Ohio law is *Johnston's Lessee v. Haines,* 2 Ohio 55 (Ohio 1825). In *Johnston's Lessee,* the plaintiff based his title to real property on a copy of a deed certified by the county recorder. In the certificate of acknowledgment on the deed "it was not expressed that the person taking it was an officer of any kind, and the name subscribed was without any official character." *Johnston's Lessee,* 2 Ohio at 55. Given this omission, "[t]he plaintiff offered to prove, by other evidence, that the person who took the acknowledgment was, in fact, at the time a justice of the peace duly commissioned and qualified." *Id.* Upon the defendant's objection, the lower court rejected both the copy of the deed and the extrinsic evidence. The Ohio Supreme Court upheld the lower court's decision and overruled the plaintiff's motion for a new trial on two grounds. Within a few years after *Johnston's Lessee* was decided the second ground on which the decision is based—that the extrinsic evidence must not be admitted because the deed was a certified copy and not the original, *see id.* at 56—would no longer apply because certified copies of public records became competent evidence in Ohio.[9] The first ground for the decision, however, remains relevant to this adversary proceeding:

> The statute, providing for the execution and acknowledgment of deeds, which was in force when this deed was recorded, required that the execution of all deeds for the conveyance of lands should be acknowledged by the grantor, or proved by the subscribing witnesses, before some judge or justice of the

**8.** It is appropriate to consider this case law—even though the parties failed to cite any of it—because "[i]gnoring ... pertinent authority as though it did not exist is ... pointless." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.,* 2006 WL 1304949 at *5 n. 3 (N.D.Ill. May 10, 2006) (internal quotation marks omitted).

**9.** *See Livingston's Lessee v. McDonald,* 9 Ohio 168, 168 (Ohio 1839) ("A recorder's copy of a deed ... is competent evidence, under the act of 1831."). Certified copies of public records also are competent evidence under federal law. *See* Fed. R. of Evid. 803(14) and 902(4).

peace, and recorded in the proper county. *The acknowledgment or proof is nothing unless it be taken by an authorized officer, and whether the person be authorized or not, is a fact which ought to appear in the certificate of the officer himself.... In this case nothing of the kind appears in the certificate or attached to the subscription, consequently the deed was not duly recorded....*

*Johnston's Lessee,* 2 Ohio at 55–56 (emphasis added).[10]

To fully appreciate the reach of this holding, one needs to know what the statute under consideration provided. Although the court in *Johnston's Lessee* did not quote the applicable statute in full or provide a citation to it, the court did describe the statute in sufficient detail to enable this Court to conclude that it was one of two statutes. The first of these statutes, which was in effect from 1795, before Ohio was a state, until June 1, 1805 ("1795 Act"), stated in pertinent part:

All deeds and conveyances, which shall be made and executed within this territory, of or concerning any lands, tenements or hereditaments therein ... shall be acknowledged by one of the grantors ... or proved by one or more of the subscribing witnesses to such deed, before one of the judges of the general court, or before one of the jus-

tices of the court of common pleas of the county where the lands conveyed do lie....

*Laws of 1795,* Chap. 53 § 8 (restated in 1 *The Statutes of Ohio and of the Northwestern Territory, Adopted or Enacted From 1788 to 1833 Inclusive: Together With the Ordinance of 1787; The Constitutions of Ohio and of the United States, and Various Public Instruments and Acts of Congress,* at 168) (Salmon P. Chase ed. 1833) ("Annotated Laws") (footnotes omitted).[11]

The second statute was effective from June 1, 1805 to January 30, 1818 ("1805 Act") and provided:

*Be it enacted, & c.* That all deeds for the conveyance of lands, tenements and hereditaments, situate, lying and being within this state, shall be signed and sealed by the grantor, in presence of two witnesses who shall subscribe the said deed or conveyance, attesting the acknowledgment of the signing and sealing thereof, and if executed within this state, shall be acknowledged by the party or parties, or proven by the subscribing witnesses, before a judge of the court of common pleas or a justice of the peace, in any county in this state.

*Acts of the Third General Assembly of the State of Ohio,* Chap. LXX § 1 (restated in Annotated Laws at 484) (footnotes omitted).[12]

---

**10.** "Pursuant to Ohio law ... the mortgagor acknowledges his signature before a notary public who signs the mortgage as notary public[.]" *Spragin v. Nowak (In re Nowak),* 330 B.R. 880 (table), 2005 WL 2240974 at *3 (6th Cir.BAP Sept.16, 2005). Thus, where the omission is by the notary public—as is the case in this adversary proceeding—one might construe the issue as a problem with the notary public's certification, not with the mortgagor's acknowledgment. But in *Johnston's Lessee*—which this Court is bound to follow for the reasons explained in this opinion—the Ohio Supreme Court described the

issue as a problem of defective acknowledgment.

**11.** The Annotated Laws is a three-volume compilation of laws in force in Ohio from 1788 through 1833.

**12.** The statute providing for the execution and acknowledgment of deeds was amended twice again—in 1818 and 1820—before *Johnston's Lessee* was decided, but the language of those statutes is inconsistent with the description of the statute under consideration in *Johnston's Lessee.* The 1818 and 1820 statutes do not

Both the 1795 and the 1805 statutes required—as § 5301.01(A) currently does—that an acknowledgment be made before certain public officials (then, a judge of the court of common pleas or a justice of the peace). And, like § 5301.01(A), the provisions did not explicitly require the judge or justice of the peace to be identified as such; in fact, the statutes did not even expressly require that the judge or justice of the peace subscribe his or her name to the certificate of acknowledgment. Thus, although the Ohio Supreme Court has not ruled on the effect of omitting the certifying officer's official title in the context of § 5301.01(A) itself, the language of § 5301.01(A) is sufficiently similar in all material respects to the statutory language considered by the Ohio Supreme Court in *Johnston's Lessee* that this Court should consider *Johnston's Lessee* as providing the controlling rule of law. *Cf. Roberds,* 313 B.R. at 737 (holding that, although the Ohio Supreme Court "has not considered the text of the current ... [s]tatute ... the relevant language previously considered by [that court] remains unaltered in any significant aspect in the current statute"). Importantly, based on the certificate's failure to identify the certifying official as a justice of the peace, the Ohio Supreme Court held that "the deed was not duly recorded...." *Johnston's Lessee,* 2 Ohio at 56.

On more than one occasion, the Ohio Supreme Court has expressly stated that *Johnston's Lessee* stands for the proposition that a real estate instrument is defectively executed and not entitled to be recorded if the certifying officer's official title is omitted from the certificate of acknowledgment. *See Dodd v. Bartholomew,* 44 Ohio St. 171, 5 N.E. 866, 868 (1886); *Livingston's Lessee,* 9 Ohio at 170. In *Dodd,* the Ohio Supreme Court considered minor discrepancies between the language used in the certificate of acknowledgment and in the mortgage itself with respect to the names of the mortgagors. The court distinguished such discrepancies from mistakes in "the execution and recording" of a mortgage, holding that "it is settled that a mistake in [execution and recording] cannot be correcte[d]." *Dodd,* 5 N.E. at 868. The *Dodd* court pointed out that the issue presented there was "very different from that where an error occurs in the execution of the instrument," noting that the "formalities as to the execution are prescribed by statute, and cannot be dispensed with." *Id. See also Argent Mortgage Co. v. Drown (In re Bunn),* 578 F.3d 487, 490 (6th Cir.2009) ("Ohio courts have refused to allow a recorded mortgage to give constructive notice when the mortgage had been executed in violation of a statute."). Importantly, the *Dodd* court described *Johnston's Lessee* as a case involving "a defect in the execution" of the deed that arose because "the official

contemplate that the grantor's signature could be proven by subscribing witnesses, *see* Annotated Laws, Volume II, at 1041 and 1139, while the earlier statutes and the one described in *Johnston's Lessee* do. The Court, therefore, has determined that it is one of the two earlier statutes quoted above that was the statute "in force when [the] deed was recorded[.]" *Johnston's Lessee,* 2 Ohio at 55. The 1818 and 1820 statutes required the inclusion of the certifying official's seal. *See* Annotated Laws, Volume II, at 1041 and 1139. The seal would have indicated the certifying official's

authority to make the certification. In effect, under these laws, indication of the certifying official's title was required. Thus, if the 1818 or 1820 statutes had been at issue in *Johnston's Lessee,* there would have been a basis for finding a distinction with a difference between those statutes and that which applies in this adversary proceeding—Ohio Revised Code § 5301.01(A). The 1795 and 1805 statutes, however, like the current Ohio statute and all statutes in force after the 1820 statute was repealed in 1831, did not require the seal.

character of the officer taking the acknowledgment had been omitted, and nothing appeared on the face of the acknowledgment by which this could be supplied." *Id.*

Likewise, in *Livingston's Lessee*, the Ohio Supreme Court described *Johnston's Lessee* as a case in which "it was decided[ ] that where the person taking the acknowledgment of a deed, gives himself no official character in his certificate or subscription, the certificate is insufficient, and the registry of the deed irregular." *Livingston's Lessee*, 9 Ohio at 169. As it does now, Ohio law at that time gave effect to acknowledgments certified by persons authorized to certify acknowledgments by the laws of the place where the acknowledgment was taken, which, in *Livingston's Lessee*, was Pennsylvania. Under Pennsylvania law in force at the time, Pennsylvania judges were authorized to certify acknowledgments. In *Livingston's Lessee*, the Ohio Supreme Court held that the certificate of acknowledgment at issue was valid because the certifying official, a Pennsylvania judge, identified himself as such. The party challenging the certificate of acknowledgment argued that the judge was required to expressly state that he had the authority to certify the acknowledgment. Applying the 1795 Act, the Ohio Supreme Court held that "[i]t was not necessary that the judge should say, in so many words, that he was authorized to take proof, when he stated a *fact from which that inference is irresistibly made.*" *Id.* at 170 (emphasis added). "He states his official character, and the laws of Pennsylvania gave a person invested with that official character authority to take the acknowledgment or proof." *Id.*

In addition, other decisions of the Ohio Supreme Court, although they do not cite *Johnston's Lessee*, are consistent with it. Shortly after *Johnston's Lessee* was decided, the Ohio Supreme Court issued *Brown*

*v. Farran*, 3 Ohio 140 (Ohio 1827). There, the official certifying an acknowledgment identified his office in the body of the certificate by stating "[b]efore me, the undersigned, a justice of the peace within and for said county . . . ." *Brown*, 3 Ohio at 152. The complainant asserted that this was insufficient because the justice of the peace did not also include his title after his name. *See id.* The Court rejected this argument, holding that "it is sufficient to say that the [justice of the peace] has described himself, in the body of the certificate, as a justice of the peace, which renders it unnecessary to add his title of office to his name." *Id.* The implication is that the title must be included somewhere in the certificate.

The Ohio Supreme Court's decision in *Tousley v. Tousley*, 5 Ohio St. 78 (Ohio 1855), is also consistent with *Johnston's Lessee. Tousley* involved a certificate of acknowledgment that judgment creditors of the mortgagor attacked on multiple grounds, including that "[t]he record of the mortgage does not show the official character of the person before whom it purports to have been acknowledged . . . ." *Tousley*, 5 Ohio St. at 82–83. Two certified copies of the mortgage were in evidence, one that identified the certifying officer with the initials "J.P." after his name and the other where the initials appeared to be "J.W." *Id.* at 79. According to the mortgagees, "[t]he official character of the magistrate before whom the mortgage was acknowledged, is sufficiently declared by the letters 'J.P.,' and the *inveterate practice* among justices of the peace, of using these letters for that purpose, is entitled to great weight in construing the statute under which the certificate of acknowledgment was made." *Id.* at 81. The judgment creditors countered that the initials "J.P." did not unambiguously identify the certifying official as a justice of the peace, but also might denote "judge of

police" or "judge of probate." *See id.* at 84. The Ohio Supreme Court's primary basis for the decision was that, unlike bona fide purchasers, judgment creditors are not entitled to avoid defectively executed mortgages if they are recorded. The court also held that the mortgage was duly recorded. Although it did so without directly addressing the issue relating to the identification of the justice of the peace, the court presumably was persuaded by the use of the initials J.P. in the certificate of acknowledgment. *See id.* at 84–87. *Cf. Shults v. Moore*, 22 F. Cas. 51, 52–53 (C.C.D.Ohio 1839) (No. 12,824) ("The official character of the justice does not appear in his certificate, nor are the initials J.P. annexed to his signature, nor any thing else to show in what character he acted in taking the acknowledgment.").

In *Shults*, Justice McLean of the United States Supreme Court, in an opinion he delivered while sitting on the Circuit Court for the District of Ohio,[13] held—in a case governed by Ohio law—that the title of the certifying official must appear in the certificate for the acknowledgment to be valid under the 1805 Act.[14] Justice McLean described the mortgage at issue as follows:

[T]he magistrate before whom [the mortgage deed] was acknowledged, did not state, either in the body of the certificate or with his signature that he was a justice of the peace; and it is contended that the deed, therefore, has not been legally acknowledged.... The objection is well founded in fact. The official character of the justice does not appear in his certificate, nor are the initials J.P. annexed to his signature, nor any thing else to show in what character he acted in taking the acknowledgment.

*Shults*, 22 F. Cas. at 52–53. Although *Justice McLean* did not cite Johnston's Lessee, his decision is consistent with the Ohio Supreme Court's opinion. According to Justice McLean:

[T]he acknowledgment upon its face must contain all the requisites to its validity, to have the effect of notice under the registration laws.... [T]he court will ... instruct the jury that for the purposes of this trial the acknowledgment will be considered defective and inoperative. And this being the case, the recording of the deed would not be constructive notice, under the statute.... The acknowledgment must be made before a justice of the peace,

**13.** Under the Judiciary Act of September 24, 1789, as amended in 1802, Supreme Court justices were assigned to the then-existing circuit courts. *See Comm'r v. Textile Mills SEC*, 117 F.2d 62, 67–68 (3d Cir.1940). When sitting on a circuit court, the justices were designated "circuit justices" and functioned in that capacity rather than as a justice of the Supreme Court. *See id.* As the *Textile Mills* court explained:

The Judiciary Act of September 24, 1789 set up three categories of federal courts, the Supreme Court, the circuit courts and the district courts, and these courts continued to exist as thus set up (except as to the circuit courts for the period from February 13, 1801, to July 1, 1802) until the effective date of the Judicial Code, January 1, 1912, when the circuit courts went out of exis-

tence In 1802 provision was made for the definite assignment of the Supreme Court justices to the several judicial circuits. When thus assigned and holding circuit court they became known as circuit justices. The law was that the circuit justice of the circuit and the district judge of the district in which a circuit court was held might hold the court together or either of them might hold it separately.

*Id.* (citations omitted). The current intermediate appellate courts in the federal system are known as the United States Courts of Appeals.

**14.** Several deeds were at issue in *Shults*. The relevant deed for purposes of this opinion was dated September 26, 1817 and thus was governed by the 1805 Act.

and the evidence of this must be on the deed, or connected with it. And if this acknowledgment be defective in not showing that the person who took the acknowledgment had a right to take it, the act does not appear to be official, and is not a compliance with the statute. And where a purchaser is to be charged with constructive notice from the mere registration of a deed, all the substantial requisites of the law should be complied with.

*Id.* at 53. In so holding, Justice McLean expressed his disagreement with *Van Ness v. Bank of United States*, 38 U.S. 17, 13 Pet. 17, 10 L.Ed. 38 (1839), a decision of the United States Supreme Court, of which he was then a member. In *Van Ness*, the Supreme Court held that the official status of the certifying officer may be proved by extrinsic evidence if the officer's title is not stated in the certificate of acknowledgment. *See Van Ness*, 38 U.S. at 21. Although the parties did not cite *Van Ness* or any other decisions along its lines, the Court recognizes that certain other courts have held that the failure to properly identify the title of the certifying official will not render a certificate of acknowledgment invalid if there is extrinsic evidence that the officer had the requisite authority. *See Bank of United States v. Benning*, 2 F. Cas. 686, 687 (C.C.D.C.1830) (No. 908); *Bennet v. Paine*, 1838 WL 3254 at *1 (Pa.1838); *Gourley v. Hankins*, 1855 WL 195 at **3–4 (Iowa 1855). Still other courts are in the Ohio camp. *See Blanchard v. Taylor's Heirs*, 46 Ky. 645, 1847 WL 2889 at *3 (Oct. 4, 1847); *Coffey v. Hendricks*, 66 Tex. 676, 2 S.W. 47, 48 (1886).

Secondary authorities have long recognized that Ohio law is as set forth in *Johnston's Lessee*. Salmon P. Chase, who was a prominent Ohio attorney at the time and who later became the sixth Chief Justice of the United States Supreme Court (1864–1873), cited *Johnston's Lessee* in his annotated version of early Ohio law for the proposition that "[w]hen the person taking the acknowledgment of a deed, gives himself no official character in his certificate or his subscription thereto, the acknowledgment is insufficient" and "[t]he record of such deed is irregular[.]" Annotated Laws, Volume III, at 1843–44 n.†. More recent treatises also have recognized that *Johnston's Lessee* stands for this proposition. *See* 1 O. Jur.3d *Acknowledgments* § 25 (2009) (citing *Johnston's Lessee* for the proposition that "[a] certificate of acknowledgment is insufficient unless the person taking the acknowledgment gives himself or herself some official character, either in the body of the certificate or after his or her signature"); Annotation, *Sufficiency of Certificate of Acknowledgment*, 29 A.L.R. 919 (1924) (citing *Johnston's Lessee*, as well as decisions from other jurisdictions, for the proposition that "in other cases certificates by one not describing himself as an officer of any kind, and not subscribing any official character, have been held to be fatally defective"). Even if it were to agree with the decisions that are contrary to *Johnston's Lessee*, the Court would not be at liberty to follow them. This is because, based on its review of the case law and secondary authorities, the Court concludes that the Ohio Supreme Court has never overruled *Johnston's Lessee* and that the decision remains good law despite its vintage. And, as discussed above, the Court is bound to apply Ohio law consistent with the interpretation given to it by the highest court of the State. *See also Van Ness*, 38 U.S. at 21 ("If the Maryland Courts had given a contrary construction to these Acts of Assembly, we should of course feel it to be our duty to follow their decision."); *Shults*, 22 F. Cas. at 52 ("We do not inquire whether the construction of a statute by the supreme court of the state, is right or wrong ac-

cording to our views, but we receive it as the law of the state."). Under controlling Ohio case law, an instrument affecting real estate such as the Mortgage is defectively executed if its certificate of acknowledgment omits the official title of the person purporting to certify the acknowledgment.

█ It is true that the Certificate of Acknowledgment not only fails to identify Ms. Sayre's official title, it also identifies her as a broker. *Johnston's Lessee*, therefore, is not entirely on all fours with the fact pattern presented in this adversary proceeding. The Court, however, views *Johnston's Lessee* as sufficiently analogous. A person does not hold an office that qualifies him or her to certify acknowledgments merely by virtue of being a broker. Thus, identifying a certifying official as a broker is as efficacious as including no title at all. The result might be different if Ohio law required brokers to be notaries public, because then to identify oneself as a broker would be to "state[ ]a fact from which [the] inference is irresistibly made" that the person also was a notary public. *Livingston's Lessee*, 9 Ohio at 170. But a person does not need to be a notary public in order to be a broker in Ohio.

█ In *Amick v. Woodworth*, 58 Ohio St. 86, 50 N.E. 437 (1898), the Ohio Supreme Court held that the purpose of the mortgage-execution requirements is to prevent fraud on the grantors and to "afford reasonable assurance to those who deal with or on the faith of such instruments that they are genuine and represent bona fide transactions." *Amick*, 50 N.E. at 440; *see also Bross*, 2006 WL 2381542 at *3 ("The purpose of [§ 5301.01(A) ] is to prevent fraud and provide a reasonable assurance that the document is genuine."). Permitting a notary public to omit his or her title from a certificate of acknowledgment would not serve this purpose.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** the Trustee Motion and **DENIES** the Chase Motion. The Mortgage is avoided and the lien preserved for the benefit of the Debtors' bankruptcy estates. The Court will issue a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**